The Honorable Ronald B. Leighton

1

2

3

4

5

6

7 UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
8 AT TACOMA

9 JULIANNE PANAGACOS, MALLORY )
HAGEL, STEPHANIE SNYDER, EMILY COX,) No. 3:10-cv-5018 RBL
10 KIM CHAPLIN, MOLLY PORTER, FABIOLA )
ROMERO, ANDREA ROBBINS, JULIA ) DEFENDANT CLINTON D.
11 GARFIELD, ERAN RHODES, ELI EVANS, ) COLVIN'S MOTION TO DISMISS,
CHRIS GRANDE, DAVI RIOS, ) PURSUANT TO RULE 12(b)(6), OR
12 ) IN THE ALTERNATIVE, MOTION
Plaintiffs, ) FOR SUMMARY JUDGMENT
13 ) PURSUANT TO RULE 56
v. )
14 ) NOTE ON MOTION CALENDAR:
JOHN J. TOWERY, THOMAS R. RUDD; ) October 22, 2010
15 CLINTON D. COLVIN; CITY OF OLYMPIA; )
TOR BJORNSTAD, ET AL., )
16 )
Defendants. ) ORAL ARGUMENT REQUESTED
17 _____ )

18

19

20

21

22

23

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

## Table of Contents

I.    INTRODUCTION..................................................................................1

II.   FACTS ...............................................................................................4

    A. Plaintiffs' Second Amended Complaint ..................................4

    B. Special Agent Clinton D. Colvin ............................................5

    C. United States Coast Guard ......................................................9

III.  STANDARD OF REVIEW ................................................................9

    A. Failure to State a Claim..........................................................9

    B. Summary Judgment...............................................................11

IV.  LEGAL ANALYSIS........................................................................12

    A. Count One:  Violation of Civil Rights under 42 U.S.C. § 1983 ...............12

    B. Count Two:  Violation of Civil Rights under 42 U.S.C. § 1983.............13

    C. State Law Claims:  Count Three - Violation of Civil Rights under
       Washington State Constitution, Article I, Sections 5 and 7; Count Four -
       False Arrest; Count Five - False Imprisonment; Count Six - Assault and
       Battery; Count Seven - Intentional Infliction of Emotional Distress; and
       Count Eight - Malicious Prosecution .......................................13

V.   LEGAL ANALYSIS *BIVENS*...........................................................16

    A. Count Nine:  Violation of Constitutional Rights under *Bivens*................16

    B. S/A Colvin is Entitled to Qualified Immunity for all of Plaintiffs' *Bivens*
       Claims. ...................................................................................17

       1.    The Framework for the Qualified Immunity Defense..........................17

       2.    Plaintiffs fail to establish that S/A Colvin personally participated in any
            violation of Plaintiffs' constitutional rights. .......................................20

       3.    Plaintiffs fail to establish that S/A Colvin personally violated their First
            Amendment Rights.................................................................23

       4.    The First Amendment right alleged was not clearly established in the
            circumstances set forth the in the Second Amended Complaint..........................29

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — i
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

5.   Assuming, *arguendo*, there was a Violation, S/A Colvin Reasonably but
Mistakenly Believed his Conduct Did Not Violate a Clearly Established
Constitutional Right. ........................................................................................30

6.   Plaintiffs' Fail to State a Claim Under the Posse Comitatus Act.........................31

7.   Plaintiffs' Injunctive Relief Claims Fail as a Matter of Law. ..............................34

VI.  SUMMARY JUDGMENT.....................................................................................40

VII. CONCLUSION .....................................................................................................41

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) --- ii
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# Table of Authority

**Page(s)**

CASES

*Aldabe v. Aldabe,*
616 F.2d 1089 (9th Cir. 1980) .......................................................... 19

*Am. Title Ins. Co. v. Lacelaw Corp.,*
861 F.2d 224 (9th Cir. 1988) ........................................................... 15

*American Civil Liberties Union v. National Security Agency,*
493 F.3d 644 (6th Cir. 2007) ........................................................... 23

*Am. Science & Eng'g, Inc. v. Califano,*
571 F.2d 58 (1st Cir. 1978) ............................................................. 12

*Anderson v. Creighton,*
483 U.S. 635 (1987) ................................................................. 18, 29

*Anderson v. Liberty Lobby, Inc.,*
477 U. S. 242 (1986) ............................................................ 11, 29, 40

*Arnold v. IBM Corp.,*
637 F.2d 1350 (9th Cir. 1981) .......................................................... 19

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) ............................................................. passim

*Bagdadi v. Nazar,*
84 F.3d 1194 (9th Cir. 1996) ........................................................... 40

*Barren v. Harrington,*
152 F.3d 1193 (9th Cir. 1998) .......................................................... 19

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................... 4, 10, 20, 37

*Billings v. United States,*
57 F.3d 797 (9th Cir. 1995) ............................................................ 15

*Bird v. Lewis & Clark Coll.,*
303 F.3d 1015 (9th Cir. 2002) .......................................................... 36

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,*
403 U.S. 388 (1971) ............................................................... passim

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — iii
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ........................................................................... 40

*Chuman v. Wright,*
   76 F.3d 292 (9th Cir. 1996) ......................................................... 19, 21

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ........................................................... 36, 37, 38, 39

*Consejo Puertorriqueno Por La Paz v. Director, FBI,*
   458 F. Supp. 1041 (D.D.C. 1978) ...................................................... 38

*Corr. Servs. Admin. v. Malesko,*
   534 U.S. 61 (2001) ............................................................................. 19

*Crawford-El v. Britton,*
   523 U.S. 574 (1998) ........................................................................... 18

*Davis v. Scherer,*
   468 U.S. 183 (1984) ........................................................................... 30

*Del Raine v. Carlson,*
   826 F.2d 698 (7th Cir. 1987) ............................................................. 35

*District of Columbia v. Carter,*
   409 U.S. 418 (1973) ........................................................................... 12

*Erickson v. Pardus,*
   551 U.S. 89 (2007) (per curiam) ....................................................... 10

*Feit v. Ward,*
   886 F.2d 848 (7th Cir. 1989) ....................................................... 34, 35

*Frank v. Relin,*
   1 F.3d 1317 (2d Cir. 1993) ............................................................... 35

*Franklin v. Murphy,*
   745 F.2d 1221 (9th Cir. 1984) ............................................................. 9

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.,*
   528 U.S. 167 (2000) ........................................................................... 35

*Galen v. City of Los Angeles,*
   477 F.3d 652 (9th Cir. 2007) ............................................................. 28

*Gest v. Bradbury,*
   443 F.3d 1177 (9th Cir. 2006) ........................................................... 36

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — iv
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ............................................................................... 17, 18

*Harper v. Wallingford,*
    877 F.2d 728 (9th Cir. 1989) ...................................................................... 11

*Hodgers-Durgin v. De La Vina,*
    199 F.3d 1037 (9th Cir. 1999) *(en banc)* ...................................................... 36

*Hoffa v. United States,*
    385 U.S. 293 (1966) ................................................................................... 24

*Hope v. Pelzer,*
    536 U.S. 730 (2002) ................................................................................... 29

*Hunter v. Bryant,*
    502 U.S. 224 (1991) ................................................................................... 30

*Jackson v State,*
    572 P.2d 87 (Alaska 1977) .................................................................... 33, 34

*Johnson v. Riverside Healthcare Sys.,*
    534 F.3d 1116 (9th Cir. 2008) ...................................................................... 9

*Kirby v. City of Elizabeth,*
    388 F.3d 440 (4th Cir. 2004) ...................................................................... 35

*Laird v. Tatum,*
    408 U.S. 1 (1972) ................................................................................. 23, 24

*Lamont v. Haig,*
    539 F. Supp. 552 (D.S.D. 1982) .................................................................. 32

*Leer v. Murphy,*
    844 F.2d 628 (9th Cir. 1988) ...................................................................... 21

*Linda R.S. v. Richard D.,*
    410 U.S. 614 (1973) ................................................................................... 32

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ................................................................................... 36

*Lujan v. Nat'l Wildlife Fed.,*
    497 U.S. 871 (1990) ................................................................................... 11

*Malley v. Briggs,*
    475 U.S. 335 (1986) ............................................................................. 17, 30

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — v
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*McCloskey v. Mueller,*
   446 F.3d 262, 271 (1st Cir. 2006) ........................................................................ 12

*Miale v. Tuolumne County Sheriff's Dep't,*
   No. 1:06-cv-1483, 2009 WL 3073922 (E.D. Cal. Sept. 22, 2009) ...................... 32

*Moss v. U.S. Secret Serv.,*
   572 F.3d 962 (9th Cir. 2009) ................................................................... 10, 11, 21

*Navarro v. Block,*
   250 F.3d 729 (9th Cir. 2001) ................................................................................. 9

*O'Shea v. Littleton,* 414 U.S. 488 (1974) ......................................................... 36, 39

*Pearson v. Callahan,*
   __ U.S. __, 129 S. Ct. 808 (2009) ...................................................................... 19

*Pelletier v. Fed. Home Loan Bank of S.F.,*
   968 F.2d 865 (9th Cir. 1992) ............................................................................... 15

*Pleasant v. Lovell,*
   876 F.2d 787 (10th Cir. 1989) ............................................................................. 25

*Raines v. Byrd,*
   521 U.S. 811 (1997) ............................................................................................. 35

*Ridge at Red Hawk, LLC v. Schneider,*
   493 F.3d 1174 (10th Cir. 2007) ........................................................................... 29

*Robbins v. Oklahoma,*
   519 F.3d 1242 (10th Cir. 2008) ........................................................................... 20

*Saucier v. Katz,*
   533 U.S. 194 (2001) ............................................................................... 18, 19, 29

*Scheuring v. Taylor Bros.,*
   476 F.3d 781 (9th Cir. 2007) ............................................................................... 11

*Scott v. Flowers,*
   910 F.2d 201 (5th Cir. 1990) ............................................................................... 35

*Simmat v. U.S. Bureau of Prisons,*
   413 F.3d 1225 (10th Cir. 2005) ........................................................................... 35

*Skoog v. County of Clackamas,*
   469 F.3d 1221 (9th Cir. 2006) ............................................................................. 18

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — vi
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Smith v. Maryland,*
   442 U.S. 735 (1979).............................................................................................. 25

*Sorrells v. United States,*
   287 U.S. 435 (1932).............................................................................................. 24

*Terrell v. Brewer,*
   935 F.2d 1015 (9th Cir. 1990).............................................................................. 19

*United Presbyterian Church v. Reagan,*
   738 F.2d 1375 (D.C. Cir. 1984) .......................................................................... 23

*United States v. Aguilar,*
   883 F.2d 662 (9th Cir. 1989)...................................................................... 25, 26, 27

*United States v. Banks,*
   539 F.2d 14 (9th Cir. 1976).................................................................................. 31

*United States v. Chaparro-Almeida,*
   679 F.2d 423 (5th Cir. 1982)................................................................................ 33

*United States v. Chon,*
   210 F.3d 990 (9th Cir. 2000)................................................................................ 33

*United States v. Knotts,*
   460 U.S. 276 (1983).............................................................................................. 39

*United States v. Mayer,*
   503 F.3d 740 (9th Cir. 2007)................................................................................ 26

*United States v. Miller,*
   425 U.S. 435 (1976).............................................................................................. 24

*United States v. Oaks,*
   527 F.2d 937 (9th Cir. 1975)................................................................................ 25

*United States v. Smith,*
   499 U.S. 160 (1991)............................................................................ 13, 14, 15, 16

*Ward v. Gordon,*
   999 F.2d 1399 (9th Cir. 1993).............................................................................. 14

*Westfall v. Erwin,*
   484 U.S. 292 (1988)..................................................................................... passim

*Whitmore v. Arkansas,*
   495 U.S. 149 (1990)........................................................................................ 36, 39

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Wilson v. Layne,*
   526 U.S. 603 (1999) .................................................................................... 29

*Wolfe v. Strankham,*
   392 F.3d 358 (9th Cir. 2004) ............................................................. 4, 34, 35

**STATUTES**

14 U.S.C § 1 ................................................................................................ 1, 9, 33

14 U.S.C. § 2 .......................................................................................................... 33

14 U.S.C. § 3 .......................................................................................................... 33

14 U.S.C. § 95 .......................................................................................................... 1

14 U.S.C. § 141 ....................................................................................................... 9

18 U.S.C. § 1385 ................................................................................................... 31

28 U.S.C. §§ 1346(b) ........................................................................................... 13

28 U.S.C. §§ 2671-80 ........................................................................................... 13

28 U.S.C. §§ 2672, 2674, 2679 (*Westfall* Act) ............................................... 13

28 U.S.C. § 2679(b)(1) ...................................................................................... 3, 14

28 U.S.C. § 2679(b)(2) ......................................................................................... 15

28 U.S.C. § 2679(d)(1) ................................................................................... 14, 15

28 U.S.C. § 2679(d)(2) ......................................................................................... 16

33 U.S.C. § 1221 ..................................................................................................... 1

42 U.S.C. § 1983 ............................................................................................... 3, 12

46 U.S.C. § 70112(a)(2) ........................................................................................ 8

Other Authorities

141 A.L.R. Fed. 271 (2009) ................................................................................ 32

28 C.F.R. § 15.4(a) ............................................................................................... 14

28 C.F.R. § 50.16 .................................................................................................... 1

Fed. R. Civ. P. 8(a)(2) ....................................................................................... 9, 10

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 13

Fed. R. Civ. P. 56(b) ................................................................................................. 39

Fed. R. Civ. P. 56(c) ............................................................................................. 11, 39

U.S. Const. art. III, § 2, cl. 1 ..................................................................................... 35

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — ix
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

COMES NOW defendant Clinton D. Colvin, Special Agent (S/A), United States Coast Guard Investigative Service, by and through his counsel, Mark N. Bartlett, and hereby[1] respectfully requests this Court to dismiss with prejudice all claims against him pursuant to Rules 12(b)(1), 12(b)(6) and 56(c) of the Federal Rules of Civil Procedure.

## I.    INTRODUCTION

The United States Coast Guard (USCG) is a unique, hybrid federal agency that is a part of the Department of Homeland Security, unless and until the nation declares war or the President issues an executive order, which transfers their authority to the United States Navy.  14 U.S.C § 1.  Unlike other branches of the armed forces, the USCG has been specifically authorized to carry out law enforcement functions.  14 U.S.C. § 95.  In addition, since the terrorist attacks of 9/11, Congress has asked that the USCG assume greater involvement in law enforcement activity and information-gathering as it relates to port security and safety.  When Congress passed the Ports and Waterways Safety Act, it specifically assigned the USCG responsibility for ensuring the safety of our nation's ports and waterways.  "The safety and security of the United States ports and waterways are matters of national importance," and "advanced planning is critical in determining proper and adequate protective measures for the Nation's ports and waterways and the marine environment, with continuing consultation with other Federal agencies, State representatives, affected users and the general public."  33 U.S.C. § 1221.

In November 2007, the United States Navy Ship (USNS) *Brittin* was being used by the U.S. Army 833rd Transportation Battalion to bring back equipment in need of

---

[1] Although sued in his personal capacity, defendant Colvin has requested and received representation of private counsel at government expense, pursuant to 28 C.F.R. § 50.16, which authorizes federally funded representation of federal employees sued in their individual capacity when the events giving rise to the suit occurred within the scope of federal employment and it reasonably appears federally funded representation

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 1
DWT 14735127v2 0092030-000001

maintenance that had been employed in support of Operation Iraqi Freedom, including substantial amounts of equipment issued to the Fort Lewis Stryker Brigade. The USNS *Brittin* was scheduled to unload at the Port of Olympia. USCG Investigative Service Special Agent (S/A) Clinton D. Colvin was assigned to the Seattle Field Intelligence Support Team (FIST) during this time period. S/A Colvin was tasked with drafting a threat assessment for the USCG Marine Safety and Security Teams that would be providing security for the USNS *Brittin*. As part of his work, S/A Colvin attended public meetings, monitored open source websites, and shared information with other state and federal agencies attempting to ensure the safety of the port.

Plaintiffs were members of a group called the Olympia Port Militarization Resistance (PMR) who, beginning in May 2006, were involved in criminal acts of civil disobedience, including trespass and forming human chains to block highways. *See* Exhibit 1, Video compiled by *The Olympian* from events occurring on Saturday, November 10, 2007. These actions were aimed at impeding military shipments connected to the wars in Iraq and Afghanistan that used Washington State ports. Plaintiffs allege that on November 13, 2007, they were part of a group of 41 individuals who were arrested for attempted disorderly conduct. Plaintiffs' action is a suit for money damages, punitive damages, and injunctive relief for alleged injuries sustained during the November 2007 anti-war protests that occurred in Olympia, Washington.

One of the numerous defendants sued by Plaintiffs was S/A Colvin. S/A Colvin had no involvement with the arrests that occurred on November 13, 2007. When you eliminate the hyperbole and focus on the specific allegations set forth in Plaintiffs' Second

would be in the interest of the United States.
DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 2
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   Amended Complaint, the sole claim against S/A Colvin is that he attended public meetings

2   held in the Olympia area without identifying himself as a CGIS employee, and

3   subsequently wrote reports about what occurred at these public meetings.

4         A cursory review of Plaintiffs' Second Amended Complaint reveals it is wholly

5   lacking in substance relating to allegations against S/A Colvin.  Plaintiffs do not allege any

6   facts demonstrating that S/A Colvin was involved in their arrests.  Plaintiffs do not even

7   allege that S/A Colvin was part of the decision-making process as to who should be

8   arrested, or when and where those arrests should take place.  Nor do Plaintiffs allege any

9   facts suggesting that S/A Colvin had any supervisory or other responsibility for anyone

10  who did have direct personal involvement in Plaintiffs' arrests.  Yet in Plaintiffs' view,

11  S/A Colvin should personally pay damages to them for their claimed injuries because he

12  went to open, public meetings and wrote reports that generally described what occurred at

13  those meetings.

14        Plaintiffs' claims are wholly lacking in both legal and factual support.  First, the

15  Section 1983 claim against S/A Colvin must be dismissed because he is a federal officer

16  and did not act under color of state law (Count One).  Second, the state law claims against

17  S/A Colvin must be dismissed because he is entitled to *absolute* immunity under 28 U.S.C.

18  § 2679(b)(1), the *Westfall* Act.  The exclusive remedy for the wrongful or negligent

19  conduct of a federal employee acting within the scope of his employment is a suit against

20  the United States under the Federal Tort Claims Act (FTCA) (Counts Three – Eight).

21        Finally, the federal constitutional *Bivens* claim (Count 9) must also be dismissed

22  because it fails to state a claim upon which relief can be granted.  The Second Amended

23  Complaint fails to set forth factual allegations sufficient to establish, as it must, that S/A

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 3
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Colvin **personally** participated in any particular claimed constitutional violations to which Plaintiffs were allegedly subjected. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). Moreover, Plaintiffs fail to allege the violation of any clearly established constitutional rights for their constitutional claims. Even assuming, *arguendo*, that Plaintiffs do state a cognizable *Bivens* claim against S/A Colvin, their claim is barred by qualified immunity. Finally, Plaintiffs' claim for declaratory relief fails because S/A Colvin, in his individual capacity, is not a party from whom declaratory relief can be sought or obtained. *Wolfe v. Strankham*, 392 F.3d 358, 360 n.2 (9th Cir. 2004). Moreover, Plaintiffs lack standing to obtain such relief.

## II.   FACTS

### A.   Plaintiffs' Second Amended Complaint

A careful review of Plaintiffs' Second Amended Complaint (SAC) reveals that it is almost totally lacking in specific factual allegations relating to S/A Colvin, and the alleged facts that do mention S/A Colvin describe actions that are legal and proper.[2] The facts set forth in the Second Amended Complaint describe nothing more than the activities that S/A Colvin was required to engage in to complete his designated job for the Coast Guard. First, Plaintiffs allege that "no later than May of 2007, the Coast Guard also began infiltrating and illegally spying on PMR and other groups, either in the person of Cliff [sic] Colvin directly or with CGIS officers planed [sic] and supervised by Defendant Colvin." SAC ¶ 2.11. Next, Plaintiffs allege that "Military and law enforcement strategy meetings

---

[2] Although this Court must take all well-pleaded factual allegations set forth in Plaintiffs' Second Amended Complaint as true for purposes of this motion to dismiss, this Court should *not* accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A plaintiff has the obligation to set forth more than just labels and conclusions that recite the elements of a cause of action, they must set forth a factual statement that possesses "enough heft to show that the pleador is entitled to relief." *Twombly*, 550 U.S.at 557.

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 4
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

took place in Seattle prior to the date of the shipment. Bjornstand attended those meetings as did Rudd, Towery and Colvin, as well as officers of several law enforcement agencies . . . . At those meetings strategies and tactics for neutralizing PMR's ability to protest effectively were discussed and agreed to. *Id.* ¶¶ 2.31-2.32. Finally, Plaintiffs allege that "Towery, Rudd, Colvin, and others continued in their illegal spying role at least until Towery was caught in July of 2009." *Id.* ¶ 2.52.

Plaintiffs' Second Amended Complaint makes a factual allegation against the United States Coast Guard: "The Coast Guard also issued reports and threat assessments." *Id.* ¶ 2.23. In 2009, the Supreme Court made clear that "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thus, allegations against the Coast Guard and/or allegations made against other individuals or entities are irrelevant in analyzing Plaintiffs' claims against S/A Colvin.

**B.     Special Agent Clinton D. Colvin**

S/A Clinton Colvin joined the United States Navy in 1973, and he served on active duty for five years, receiving an honorable discharge in 1978. Declaration of Clinton D. Colvin (Colvin Decl.) ¶ 2. S/A Colvin transferred from active duty to the Naval Reserve where he served as an officer until he retired in 1995. *Id.* ¶ 2. In June 1980, he obtained a Bachelor of Arts degree from Seattle University. *Id.* ¶ 3.

In September 1985, S/A Colvin was hired as a civilian special agent with the Naval Investigative Service. *Id.* ¶ 4. In 1990, S/A Colvin left the Navy to take a similar job with the Coast Guard Investigations (renamed Coast Guard Investigative Service in 1996). *Id.* ¶ 5. In 2003, S/A Colvin was transferred from Seattle to Miami, Florida; and in February

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 5
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

2007, S/A Colvin was transferred back to Seattle. *Id.* ¶ 6. After returning to Seattle, S/A Colvin was assigned to the Field Intelligence Support Team (FIST). *Id.* ¶ 7.

In March 2007, the United States Army Stryker Brigade stationed at Fort Lewis shipped a substantial number of vehicles and equipment to Iraq using the USNS *Soderman*. This military outload (referred to as a "MOL" in the armed services) shipped through the Port of Tacoma. As part of his work with the FIST, S/A Colvin provided general intelligence related to this outload by monitoring public protests and reviewing open source information from the internet. S/A Colvin attended no meetings or any non-public events. *Id.* ¶ 9. S/A Colvin was aware, but had no involvement, in the arrests of approximately 37 protestors associated with the PMR who opposed the outload. S/A Colvin also learned that after the outload, the U.S. Army reimbursed the City of Tacoma approximately $500,000 for security-related costs connected with the shipment. *Id.* ¶ 9.

In May 2007, the United States Army Stryker Brigade stationed at Fort Lewis shipped a substantial number of vehicles and equipment to Iraq using the USNS *Cape Henry*. This military outload shipped through the Port of Grays Harbor. Again, as part of his work with the FIST, S/A Colvin provided general intelligence related to this outload by monitoring public protests and reviewing open source information from the internet. S/A Colvin attended no meetings or any non-public events. *Id.* ¶ 10.

On September 28, 2007, S/A Colvin was temporarily assigned to Hawaii. He returned to Seattle on October 9, 2007. *Id.* ¶ 12.

On October 16, 2007, S/A Colvin was tasked by his supervisor to prepare an assessment that would identify any potential threats to Coast Guard support of the USNS *Brittin*, which was returning from Iraq to the Port of Olympia carrying a large number of

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 6
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

vehicles and equipment that had been used by the Fort Lewis Stryker brigade. S/A Colvin

was aware that there had been substantial protest activity during a prior Iraq-war related

shipment out of the Port of Olympia in May 2006. Protestors had blocked and attempted

to block convoys of Army vehicles traveling to the USNS *Pomeroy* and, during one of the

protests, metal gates erected to protect the port and military equipment had been taken

down by protestors, allowing protestors to enter restricted federal area. *Id.* ¶¶ 11, 13.

On November 4, 2007, S/A Colvin attended a publicly advertised PMR-sponsored

meeting at the Traditions Café in Olympia, Washington. This was the first "activist"

meeting S/A Colvin had attended in the Northwest Region related to military shipments to

the Middle East. Everyone who wanted to attend this meeting was allowed to attend, and

during the meeting, a sheet was circulated to allow attendees to provide name and contact

information. S/A Colvin provided a false name and also provided non-Coast Guard

contact information. S/A Colvin was a passive observer at the meeting. He did not

provide any suggestions as to future actions and in no way attempted to disrupt or

influence the meeting. In fact, when an activist requested volunteers, S/A Colvin

intentionally did NOT volunteer or become involved in the management of the group. *Id.*

¶ 14.

During the first week of November 2007, S/A Colvin performed his assigned duties

related to acquiring and disseminating intelligence related to the USNS *Brittin* offload.

S/A Colvin attended other publicly advertised, unrestricted PMR-sponsored meetings that

week, a second one at the Traditions Café on Monday, November 5, and a third meeting at

the Olympia Free School on Wednesday, November 7. *Id.* ¶¶ 14-15 and Exhibit 2. Once

again, S/A Colvin was a passive observer at those meetings. Among other things, S/A

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 7
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Colvin provided information to Coast Guard superiors regarding a comment he heard wherein an activist specifically mentioned the Army might use the railroad to move equipment from the port to Fort Lewis.  Within days, law enforcement officials discovered that unknown individual(s) had poured a concrete mixture on a section of railroad tracks that intersected 7th Avenue SE blocks from the Port of Olympia.  *Id.* ¶ 16 and Exhibit 3.

On Monday, November 5, 2007, the USNS *Brittin* arrived at the Port of Olympia.  On Thursday, November 8, the USNS *Brittin* completed its offload and left the Port of Olympia.  *Id.* ¶ 17.  S/A Colvin's Coast Guard related concerns decreased substantially after the departure of the USNS *Brittin*.  On Friday morning, November 9, S/A Colvin provided a personal briefing to the Seattle Coast Guard Commander in Seattle.  After the meeting, S/A Colvin took annual leave for the rest of the day.  *Id.* ¶ 18.  S/A Colvin did not work on Saturday and Sunday, November 10 and 11, and took annual leave on Monday, November 12, a federal holiday for Veteran's Day.  *Id.* ¶ 19.

On Tuesday, November 13, 2007, S/A Colvin returned to work at the FIST in Seattle.  He did not travel to Olympia that day, and played no part in the arrests that occurred on that day.

After the November 2007 military outload, S/A Colvin continued to be a part of the FIST.  He did not, however, personally attend any further PMR-sponsored meetings, or any other similar type activist meetings.  S/A Colvin's intelligence information was acquired by monitoring open source web sites, and by conducting surveillance in public areas.  Moreover, S/A Colvin neither directed nor supervised any other Coast Guard employees to attend such meetings.  *Id.* ¶ 22.

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 8
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

### C.    United States Coast Guard

The Maritime Transportation Security Act (MTSA) (Public Law 107-295), passed in the aftermath of the September 11 terrorist attacks, provided for area maritime security committees to be established by the Coast Guard at ports across the country.  46 U.S.C. § 70112(a)(2).  The MTSA, at § 891, specifically recognizes that information-sharing among the Coast Guard, other federal agencies, state and local agencies, as well as private companies is essential to ensure port safety and is a priority for the Coast Guard. The Coast Guard is under the Department of Homeland Security.  14 U.S.C. § 1.  The Coast Guard is a hybrid agency in that it can also become a member of the armed forces during times of war or as ordered by the President.  Unlike other members of the armed forces, the Coast Guard is given statutory authority to assist state and local law enforcement agencies with criminal enforcement actions.  14 U.S.C. §§ 95 and 141.

## III.    STANDARD OF REVIEW

### A.    Failure to State a Claim

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of a claim for relief. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "In deciding such a motion, all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them." *Id.*  "A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  A complaint may also be dismissed for failure to state a claim if

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 9
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   it discloses some fact or complete defense that will necessarily defeat the claim. *Franklin*

2   *v. Murphy*, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

3       Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain

4   statement of the claim showing that the pleader is entitled to relief." The Supreme Court

5   has explained the pleading requirements of Rule 8(a)(2) and the requirements for surviving

6   a Rule 12(b)(6) motion to dismiss in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). *See also*

7   *Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam); *Bell Atl. Corp. v. Twombly*, 550 U.S.

8   544 (2007); *Moss v. U.S. Secret Serv.*, 572 F.3d 962 (9th Cir. 2009).

9       The pleading standard of Rule 8 does not require "detailed factual allegations."

10  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555); see also *Erickson*, 551 U.S.

11  at 93; *Moss*, 572 F.3d at 968. However, a complaint does not meet the pleading standard if

12  it contains merely "labels and conclusions" or "a formulaic recitation of the elements of a

13  cause of action." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). Instead, to

14  comply with Rule 8(a)(2) and survive a motion to dismiss under Rule 12(b)(6), "a

15  complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

16  that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at

17  570). "A claim has facial plausibility when the plaintiff pleads factual content that allows

18  the court to draw the reasonable inference that the defendant is liable for the misconduct

19  alleged." *Iqbal*, 129 S. Ct. at 1949. This plausibility standard is not a probability

20  requirement, but does ask for more than mere possibility; if a complaint pleads facts

21  "merely consistent with" a theory of liability, it falls short of "the line between possibility

22  and plausibility." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

23      The Supreme Court has set out a two-pronged approach for reviewing possible

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 10
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   failure to state a claim. *Iqbal*, 129 S. Ct. at 1949-50; *see also Moss*, 572 F.3d at 969-70.

2   First, the reviewing court may identify those statements in a complaint that are actually

3   conclusions, even if presented as factual allegations. *Iqbal*, 129 S. Ct. at 1949-50. Such

4   conclusory statements (unlike proper factual allegations) are not entitled to a presumption

5   of truth. *Id*. In this context it is the conclusory nature of the statements (rather than any

6   fanciful or nonsensical nature) "that disentitles them to the presumption of truth." *Id*. at

7   1951. Second, the reviewing court presumes the truth of any remaining "well-pleaded

8   factual allegations," and determines whether these allegations and reasonable inferences

9   from them plausibly support a claim for relief. *Id*. at 1950; *see also Moss*, 572 F.3d at 969-

10  70.

11  **B.   Summary Judgment**

12         Summary judgment is appropriate where "the pleadings, the discovery and

13  disclosure materials on file, and any affidavits show that there is no genuine issue as to any

14  material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.

15  P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The mere existence

16  of *some* alleged factual dispute between the parties will not defeat a properly supported

17  motion for summary judgment; the dispute must involve a *genuine* issue of *material* fact.

18  *Id*. In assessing whether to grant summary judgment to the moving party, facts are to be

19  viewed in the light most favorable to the non-moving party and all reasonable inferences

20  should be drawn in that party's favor. *Scheuring v. Taylor Bros.*, 476 F.3d 781, 784 (9th

21  Cir. 2007). However, a mere assertion that a genuine issue of fact exists does not preclude

22  summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989). In

23  considering a motion for summary judgment, courts should not equate general averments

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 11
DWT 14735127v2 0092030-000001

with the type of "specific facts" required by Rule 56(c) to demonstrate the existence of a

genuine issue for trial. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Demanding such factual specificity ensures that conclusory allegations in a complaint or

answer are not merely replaced with conclusory allegations in an affidavit. *Id.*

## IV.   LEGAL ANALYSIS

### A.   Count One:  Violation of Civil Rights under 42 U.S.C. § 1983

Count One of Plaintiff's Second Amended Complaint alleges that "All Individual

Defendants" deprived the Plaintiffs of their constitutionally protected rights under 42

U.S.C § 1983.  Although technically S/A Colvin falls within the category of "All

Individual Defendants," it is clear from the context of the complaint as well as the well-

accepted jurisprudence of Section 1983 that such a claim cannot lie against S/A Colvin.

First, Paragraph 4.2 specifies that the claim is brought against "State and Local Defendants

[who] acted under color of state law."  In an earlier section (Paragraph 1.17), Plaintiffs

concede that S/A Colvin is a federal officer acting within the scope of his duties.  Thus, it

appears Plaintiffs' caption of "All Individual Defendants" is an oversight.

Second, if this is not an oversight, it is settled law that a Section 1983 action cannot

be maintained against a federal officer. *McCloskey v. Mueller*, 446 F.3d 262, 271 (1st Cir.

2006).  Section 1983 requires *state* action; it allows a person to recover damages from an

officer who acted under color of state law to deprive an individual of a Constitutional right.

Federal Officers are exempt from the proscriptions of Section 1983. *District of Columbia*

*v. Carter*, 409 U.S. 418, 420-24 (1973); *see also Am. Science & Eng'g, Inc. v. Califano*,

571 F.2d 58, 63 n.8 (1st Cir. 1978).  Therefore, Plaintiffs' Section 1983 claim against S/A

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 12
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Colvin must be dismissed for failure to state a claim upon which relief can be granted.

Fed. R. Civ. P. 12(b)(6).

### B.      Count Two:  Violation of Civil Rights under 42 U.S.C. § 1983

Count Two alleges violations committed by "Defendants City of Olympia, and Does 201-350." S/A Colvin is not named as a defendant in Count Two.

### C.      State Law Claims:  Count Three—Violation of Civil Rights under Washington State Constitution, Article I, Sections 5 and 7; Count Four—False Arrest; Count Five—False Imprisonment; Count Six—Assault and Battery; Count Seven—Intentional Infliction of Emotional Distress; and Count Eight—Malicious Prosecution[3]

In Counts Three through Eight, Plaintiffs attempt to bring a variety of state law claims against S/A Colvin, to include:  Count Three, violation of the Washington State Constitution; Count Four, the tort of false arrest; Count Five, the tort of false imprisonment; Count Six, the tort of assault and battery; Count Seven, the tort of intentional infliction of emotional distress; and Count Eight, the tort of malicious prosecution.  Under well-settled statutory and decisional authority, such state law claims are properly asserted only against the United States under the Federal Tort Claims Act (FTCA).  Accordingly, the United States must be substituted in place of S/A Colvin on those state law claims, and the state law claims against S/A Colvin must be dismissed.

On November 18, 1988, President Ronald Reagan signed into law the Federal Employees Liability Reform and Tort Compensation Act ("*Westfall* Act"), 28 U.S.C. §§ 2672, 2674, 2679.[4]  The *Westfall* Act amended the Federal Tort Claims Act (FTCA), 28

---

[3] The Second Amended Complaint includes two claims labeled as claim eight—one for malicious prosecution and a second one for violations of the Constitution purportedly pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  For the sake of clarity and convenience, the *Bivens* claim will be referred to as "Claim Nine."

[4] The name "*Westfall* Act" derives from *Westfall v. Erwin*, 484 U.S. 292 (1988), the decision that Congress legislatively overrode in granting absolute immunity to federal employees. *See United States v. Smith*, 499

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 13
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

U.S.C. §§ 1346(b), 2671-80, for the express purpose of "protecting federal employees from personal liability for common law torts committed within the scope of their employment. The *Westfall* Act provides that a claim against the United States under the FTCA is the "*exclusive*" remedy for a plaintiff seeking to recover damages from the "negligent or wrongful act or omission of any employee of the Government . . . acting within the scope of his office or employment." 28 U.S.C. §2679(b)(1) (emphasis added). The *Westfall* Act emphasizes that all "other civil action[s] or proceeding[s] . . . against the employee or the employee's estate [are] *precluded* without regard to when the act or omission occurred." *Id.* (emphasis added). Thus, the *Westfall* Act confers on federal employees absolute immunity from almost all damages claims arising out of actions taken within the scope of their employment. The Act relieves federal employees from the cost and effort of defending the lawsuit and places those burdens on the government's shoulders. *United States v. Smith*, 499 U.S. 160, 163 n.3 (1991).

The *Westfall* Act immunizes government employees for negligent and wrongful acts committed within the scope of their employment. 28 U.S.C. § 2679. Under the Act, the Attorney General may certify that a federal employee was acting within the scope of his employment at the time of the incident giving rise to liability. *Id.* at § 2679(d)(1). Upon such certification, the action then becomes one against the United States under the FTCA, and the government is substituted as the party defendant in place of the individual employee. *See Ward v. Gordon*, 999 F.2d 1399, 1401 (9th Cir. 1993). Under the *Westfall* Act, a federal employee is immune from suit upon certification of the Attorney General that the employee was acting within the scope of his employment. 28 U.S.C. § 2679(d)(1).

U.S. 160, 163 (1991).
DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 14
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   The United States has certified that S/A Colvin was acting within the scope of his

2   employment at all times relevant hereto.  The Attorney General delegated the authority to

3   certify scope of employment to "the United States Attorney for the district where the civil

4   action or proceeding is brought." 28 C.F.R. § 15.4(a).  The United States Attorney for the

5   Western District of Washington, Jenny A. Durkan, has certified that S/A Colvin was acting

6   within the scope of his federal office or employment at the time of the alleged incidents out

7   of which the Plaintiff's claims arose.  *See* Colvin Decl. Exhibit 4, Certification of Scope of

8   Employment.

9       *Westfall* certification is entitled to "*prima facie*" effect that the defendant acted

10  within the scope of his employment and is "*conclusive unless challenged.*" *Billings v.*

11  *United States*, 57 F.3d 797, 800 (9th Cir. 1995) (emphasis added).  To challenge the

12  certification, Plaintiffs bear the burden of establishing that S/A Colvin acted outside the

13  scope of employment as determined by Washington *respondeat superior* law.  *Pelletier v.*

14  *Fed. Home Loan Bank of S.F.*, 968 F.2d 865, 876 (9th Cir. 1992).

15      In this instance, Plaintiffs cannot meet that burden.  Plaintiffs' Second Amended

16  Complaint states that S/A  Colvin was " acting within the scope of his duties, though

17  illegally under U.S. law." SAC ¶ 1.17; *see also Am. Title Ins. Co. v. Lacelaw Corp.*, 861

18  F.2d 224, 226 (9th Cir. 1988) (such admissions are binding and have the effect of wholly

19  dispensing with the need for any proof of the fact).  Accordingly, upon certification by

20  United States Attorney Durkan that Defendant Colvin was acting within the scope of his

21  employment, the action against him "shall be deemed an action against the United

22  States . . . , and the United States shall be substituted as the party defendant." 28 U.S.C.

23  § 2679(d)(1).

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 15
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

The *Westfall* Act provides only two exceptions to the rule that the FTCA is the exclusive remedy for claims against federal employees: (1) claims brought "for a violation of the Constitution of the United States" and (2) claims brought "for a violation of a statute of the United States under which such action against an individual is otherwise authorized." 28 U.S.C. § 2679(b)(2). The *Westfall* Act bars all other claims against federal employees based upon conduct undertaken within the scope of their employment. *Smith*, 499 U.S. at 166-67 (refusing to infer another exception beyond the two expressly stated in the statute).

None of the state law claims falls within either exception to the *Westfall* Act's rule of absolute immunity. Since none of the exceptions to the *Westfall* Act bars substitution of the United States for S/A Colvin on any of Plaintiffs' state-law claims, the action "shall be deemed to be an action or proceeding brought against the United States [under the FTCA] and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(2); *accord Smith*, 499 U.S. at 164 n.5.

## V.   LEGAL ANALYSIS *BIVENS*

### A.   Count Nine: Violation of Constitutional Rights under *Bivens*

Plaintiffs' federal constitutional claims for damages, generally referred to as a *Bivens* claim, must also be dismissed. Plaintiffs' Second Amended Complaint is not a model of draftsmanship or clarity. Count Nine makes virtually no mention of S/A Colvin besides the conclusory statement claiming that he is "liable to Plaintiffs for the Constitutional and tort violations detailed throughout this complaint." SAC ¶ 4.48. Much earlier in the Second Amended Complaint, in the paragraph identifying S/A Colvin as a defendant, Plaintiffs alleged that he violated their "1st Amendment Free Expression and

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 16
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Free Associational activities" by engaging in illegal surveillance and spying. *Id.* ¶ 1.17.[5]

The Second Amended Complaint also appears to attempt to allege that S/A Colvin violated

Plaintiffs' Fourth Amendment rights against illegal search and seizure by "identifying

individuals and groups of individuals to be arrested and/or targeted despite their lack of

illegal activity." *Id.* ¶1.17. The Second Amended Complaint further mentions alleged

violations of the Plaintiffs' Fifth and Fourteenth Amendment equal protection without any

hint of how S/A Colvin allegedly violated these constitutional rights.

**B.   S/A Colvin is Entitled to Qualified Immunity for all of Plaintiffs' *Bivens* Claims.**

Plaintiffs' constitutional claims should be dismissed because S/A Colvin is entitled

to qualified immunity.

### 1.   The Framework for the Qualified Immunity Defense

Qualified immunity shields government officials who perform discretionary

governmental functions from civil liability so long as their conduct does not violate any

"clearly established statutory or constitutional rights of which a reasonable person would

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity

"provides ample protection to all but the plainly incompetent or those who knowingly

violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity is not merely a defense to liability. It is intended to afford

sweeping protections to federal officials from the entirety of the litigation process.

Government officials are accorded qualified immunity "to shield them from undue

interference with their duties and from potentially disabling threats of liability." *Harlow*,

---

[5] Paragraph 1.17 further alleges that the Coast Guard, among other agencies, specifically targeted the Plaintiffs because they "did not like the content of the speech involved," but makes no allegation that S/A

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 17
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

457 U.S. at 806. Accordingly, the Supreme Court has repeatedly emphasized that an official's entitlement to qualified immunity must be resolved at the earliest possible stage of the litigation and that "discovery should not be allowed" until it is determined that plaintiff has properly stated a claim for the violation of a clearly established right. *Harlow*, 457 U.S. at 818-19; *Crawford-El v. Britton*, 523 U.S. 574, 597-98 (1998); *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987). The Supreme Court recently in *Peterson v. Callahan*, _U.S. _, 129 S. Ct. 808, 815 (2009), set forth the importance of the doctrine of qualified immunity:

> Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S .Ct. 2806, 86 L. Ed.2d 411 (1985) (emphasis deleted). Indeed, we have made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery." *Anderson v. Creighton*, 483 U.S. 635, 640, n.2, 107 S. Ct. 3034, 97 L. Ed.2d 523 (1987). Accordingly, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed.2d 589 (1991) (per curiam).

After a defendant asserts entitlement to qualified immunity, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. The Ninth Circuit has succinctly set forth the analysis a court must undertake in evaluating a government official's claim that his actions are protected by qualified immunity. In *Skoog v. County of Clackamas*, 469 F.3d 1221, 1229 (9th Cir. 2006), the court wrote:

> Determining whether an official is entitled to summary judgment based on the affirmative defense of qualified immunity requires applying a three-part test. First, the court must ask whether "[t]aken in the light most favorable to the party asserting the injury, [do] the facts alleged show the officer's conduct violated a constitutional right?" If the answer is no, the officer is entitled to qualified immunity. If the answer is yes, the court must proceed to the next question: whether the right was clearly

Colvin engaged in such targeting because he personally did not like the content of their speech.
DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 18
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   established at the time the officer acted.  That is, "whether it would be
2   clear to a reasonable officer that his conduct was unlawful in the situation
    he confronted."  If the answer is no, the officer is entitled to qualified
3   immunity.  If the answer is yes, the court must answer the final question:
    whether the officer could have believed, "reasonably but mistakenly . . .
4   that his or her conduct did not violate a clearly established constitutional
    right."  If the answer is yes, the officer is entitled to qualified immunity.  If
    the answer is no, he is not.

5

6   The Ninth Circuit, in *Skoog* , citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) further noted

    that:

7       [T]he Supreme Court emphasized the importance of answering the first
        question—whether a complaint states a constitutional claim—first.  If
8       courts fail to do so, they will not "set forth principles which will become
        the basis for a holding that a right is clearly established" and will thus
9       short-circuit "the process for the law's elaboration from case to case."
        The Court also emphasized the importance, in the second step, of defining
10      the right with sufficient particularity.  Determinations of whether a right is
        clearly established must be "undertaken in light of the specific context of
11      the case, not as a broad general proposition.

12      *Skoog*, 469 F.3d at 1229-30.

13      The Supreme Court recently modified the *Saucier* approach in *Pearson v.*

14  *Callahan*, __ U.S. __, 129 S. Ct. 808 (2009), and explained that lower courts may

15  "exercise their sound discretion in deciding which of the two prongs of the qualified

16  immunity analysis should be addressed first in the light of the circumstances in the

17  particular case at hand."  *Pearson*, 129 S. Ct. at 818.

18      In addition, a "plaintiff must allege facts, not simply conclusions, that show that an

19  individual was personally involved in the deprivation of his civil rights."  *Barren v.*

20  *Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  "The purpose of *Bivens* is to deter

21  individual federal officers from committing constitutional violations," thus federal officers

22  may only be subject to suit for constitutional violations if they are "directly responsible"

23

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 19
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

for them. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70-71 (2001). *Respondeat superior* is inapplicable to *Bivens* cases. *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991).

Thus, in order for Plaintiffs to establish a *Bivens* claim against S/A Colvin, Plaintiffs must specify the particular acts taken by S/A Colvin that violated the constitutional provisions on which Plaintiffs' claims rest. *Arnold v. IBM Corp.*, 637 F.2d 1350, 1355-56 (9th Cir. 1981). Plaintiffs must establish S/A Colvin's "integral participation" in the alleged unconstitutional conduct, *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996), and Plaintiffs must set forth the specific factual basis upon which they claim S/A Colvin is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

Plaintiffs' Count Nine *Bivens* claim against S/A Colvin fails as a matter of law. First, Plaintiffs have totally failed to allege facts that establish S/A Colvin personally committed acts that violate Plaintiffs' constitutional rights. Second, Plaintiffs' *Bivens'* claim fails because even assuming, *arguendo*, that S/A Colvin personally committed acts that violated a constitutional right, the right was not a "clearly established constitutional right." Finally, assuming, *arguendo*, that S/A Colvin personally committed acts that violated a constitutional right, AND further that this constitutional right was clearly established in the context of the specific facts of this case, S/A Colvin believed, reasonably but mistakenly, that his conduct did not violate a clearly established constitutional right and is therefore entitled to qualified immunity.

### 2. Plaintiffs fail to establish that S/A Colvin personally participated in any violation of Plaintiffs' constitutional rights.

In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) the Supreme Court clarified the level of specificity necessary for a complaint to survive a motion to dismiss. The Court stated that:

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 20
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

> [A] plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations omitted). Accordingly, the *Twombly* Court found, it is not sufficient for a plaintiff merely to show merely that his or her claims are "conceivable," the plaintiff must show that the complaint sets forth facts establishing that the claims are actually "plausible." *Id.* at 570. In *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008), the Tenth Circuit noted that the *Twombly* standard may have "greater bite" in the context of *Bivens* actions, "appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity 'at the earliest possible stage of a litigation.'" *Id.* at 1249 (quoting *Creighton*, 483 U.S. at 646 n.6). The personal participation inquiry "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Thus, Plaintiffs must show that S/A Colvin was "integral" to causing any alleged constitutional violation. *Chuman*, 76 F.3d at 294-95.

The Ninth Circuit recently considered an analogous situation in *Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009). In *Moss*, political activists sued the Secret Service (and individual Secret Service Agents under *Bivens*) alleging their First, Fourth and Fifth Amendment rights were violated when Secret Service agents directed state and local law enforcement personnel to move the anti-Bush protestors several blocks from where the President was scheduled to eat dinner. In finding the individual agents were entitled to qualified immunity in connection with alleged abusive tactics by local police, the Ninth Circuit noted "nowhere does their complaint allege, or even imply, that either Wood or

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 21
DWT 14735127v2 0092030-000001

Savage [the Secret Service Agents] had anything to do with how the police carried out the initial order." 572 F.3d at 971.

In their Second Amended Complaint, Plaintiffs have not alleged a single specific fact describing S/A Colvin's personal participation in any actions comprising due process deprivation, arrests, searches, use of force, cruel and unusual punishment, false imprisonment, malicious prosecution, or gender discrimination. He did NOT assist in identifying groups of individuals to be arrested.[6]  S/A Colvin not only did NOT personally participate in any arrests, searches, or imprisonment, but he was not even present in Olympia or working on the protests during the critical time period. After the USNS *Brittin* departed on November 8, 2007, S/A Colvin did not work in Olympia or have contact with the activists on subsequent days. In fact, S/A Colvin provided a debriefing in Seattle for the Coast Guard Commander on Friday morning, November 9, and then took annual leave the remainder of the day. S/A Colvin did not work Saturday, November 10, Sunday, November 11, or Monday, November 12 (which was a federal holiday—Veteran's Day). On Tuesday, November 13, 2007, S/A Colvin returned to work in Seattle. He was not in Olympia that day or night, and played no part in the arrests that were made on that day or any subsequent days. Colvin Decl. ¶¶ 18-21. Finally, S/A Colvin did not direct or supervise any CGIS employees at any time. *Id.* ¶ 22. Plaintiffs' claims are unsupported and baseless.

---

[6] It should be noted that, to the extent that the Second Amended Complaint makes generic statements about "individuals" being targeted for arrest, it is irrelevant to this cause of action. The only relevant facts are what actions a specific defendant took that had an impact on a specific plaintiff. What occurred to "individuals and groups of individuals" is wholly irrelevant.

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 22
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

###### 3.    Plaintiffs fail to establish that S/A Colvin personally violated their First Amendment Rights.

Plaintiffs' Second Amended Complaint makes general conclusory allegation that S/A Colvin engaged in "illegal spying." SAC ¶¶ 1.17, 2.11, and 4.49. These conclusory allegations appear to be based on S/A Colvin's attendance at three public meetings sponsored by the Port Militarization Resistance without identifying himself as a CGIS Special Agent, and preparing reports about the meetings.

Plaintiffs' Second Amended Complaint also alleges that "[t]hese groups and individuals were targeted specifically because the Army, Coast Guard, local law enforcement including the Olympia and Tacoma Police Departments, and other agencies, did not like the content of the speech involved." SAC ¶ 1.17. The Amended Complaint does NOT allege or set forth specific facts that S/A Colvin personally targeted any individuals or groups based on his dislike of the content of their speech.

###### a.    Plaintiffs fail to establish standing to bring their First Amendment claim.

The Supreme Court, in *Laird v. Tatum*, 408 U.S. 1 (1972), considered the issue of standing in First Amendment cases. In *Laird*, the plaintiffs brought a civil suit alleging that the mere existence of an Army surveillance program chilled the exercise of their First Amendment rights of free speech and assembly. The Supreme Court declined to entertain the lawsuit holding that "[a]llegations of a 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm. *Id.* at 13-14.

The *Laird* standing analysis has been consistently and persistently reaffirmed. For example, after the September 11, 2001, terrorist attacks, the National Security Agency (NSA), with the authorization of President Bush, undertook a counter-terrorism operation

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

known as the Terrorist Surveillance Program, which involved warrantless interceptions of communications where one party was located outside the United States and the NSA had a reasonable basis to conclude the party was affiliated with al Qaeda. The ACLU sued on behalf of attorneys, journalists and academics who believed they were communicating with individuals overseas who NSA might believe were affiliated with al Qaeda. The Sixth Circuit, in *American Civil Liberties Union v. National Security Agency*, 493 F.3d 644 (6th Cir. 2007), overturned a district court injunction and ruled none of the plaintiffs had standing: "even if their allegations are true, the plaintiffs still allege only a subjective apprehension and a personal (self-imposed) unwillingness to communicate, which fall squarely within *Laird*." 493 F.3d at 662. *See also United Presbyterian Church  v. Reagan*, 738 F.2d 1375, 1378 (D.C. Cir. 1984) (executive order "chilling effect" not enough to confer standing where there is no concrete harm to plaintiffs).

Plaintiffs' allegations against S/A Colvin are, if anything, even less concrete than those expressed in *Laird*. There is no allegation that S/A Colvin's actions did anything beyond allegedly "chilling" members of the protest community from meeting in the future because they feared a government  agent would be part of their meeting. Such a fear is simply not enough of a concrete harm to provide standing for Plaintiffs.

### b.   S/A Colvin's surveillance activities were legal and appropriate.

Plaintiffs' Second Amended Complaint sets forth the conclusory allegation that S/A Colvin engaged in "illegal spying," in that he "infiltrated and spied on the Port Militarization Resistance . . . by lying about his affiliations and purposes and falsely identifying himself for the purpose of spying on their meeting and activities." SAC ¶¶ 1.17, 2.11, and 4.49. Plaintiffs allegations have no basis or support in fact or law.

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 24
DWT 14735127v2 0092030-000001

The Supreme Court and lower courts have repeatedly recognized that it is lawful and thereby permissible for the government to use undercover agents as a legitimate and proper practice of law enforcement and is justified as in the public interest. *Sorrells v. United States*, 287 U.S. 435, 441-42 (1932); *Hoffa v. United States*, 385 U.S. 293 (1966).

Often referred to as "invited informer" or "misplaced confidence" cases, the courts have universally held that a person "takes the risk in revealing his affairs to another, that the information will be conveyed by the person to the Government." *United States v. Miller*, 425 U.S. 435, 443 (1976). That is so "even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *Id.* at 443. The Tenth Circuit quoted with approval the ancient teaching of Ecclesiasticus (Ecclesiasticus 8:18 (Apocrypha)), "Do no secret thing before a stranger, for thou knowest not what he will bring forth." *Pleasant v. Lovell*, 876 F.2d 787, 803 (10th Cir. 1989). The *Lovell* court went on to note it has been long recognized that government can use decoys and conceal the identity of its agents and individuals assume the risk when they convey information to a third party. *Id.* at 802. As the Supreme Court noted in *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979), "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties."

In *United States v. Oaks*, 527 F.2d 937 (9th Cir. 1975), the Court considered a tax protestor's claim that he had been improperly convicted. Oaks argued that the attendance of the government agents at meetings of the Tax Rebellion Committee was improper surveillance and a violation of his First and Fifth Amendment rights. *Id.* at 940. The Court soundly rejected Oaks' argument holding:

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 25
DWT 14735127v2 0092030-000001

[We do not] find the surveillance of the meetings of the Tax Rebellion Committee by the undercover agents was improper.  The meetings were open to the public and the participants were openly advocating the willful violation of the Internal Revenue laws. The risk of surveillance of meetings of this type must be assumed.

*Id.* at 941.

The intersection of the "invited informant" doctrine and the protections of the First Amendment was closely examined in *United States v. Aguilar*, 883 F.2d 662 (9th Cir. 1989).  The *Aguilar* case involved a high-profile prosecution of members of several Arizona churches, self-described sanctuary congregations, who assisted in smuggling illegal aliens into the United States from Mexico.  As part of their investigation, the government used undercover agents and informants to infiltrate various church meetings and activities, including some that occurred outside the physical boundaries of the church. The government agents and informants observed and, at times, tape recorded the activities. In ruling that the government acted properly, even when recording religious events, the Court first noted:

[A] fair reading of the invited informer cases teaches that their rationale inherently imposes a rather significant burden on *first amendment* free association rights.  In approving this investigative technique, the Supreme Court unmistakably declared that persons have no expectation of privacy or confidentiality in their conversations and relations with other persons, no matter how secretive the setting.  The Court has recognized that legitimate law enforcement interests require persons to take the risk that those with whom they associate my be government agents.

*Id.* at 703 (emphasis added).

The *Aguilar* court then went on to set forth two general principles: "First, the government's investigation must be conducted in good faith; i.e., not for the purpose of abridging first amendment freedoms . . . . Second, the first amendment requires that the undercover informers adhere scrupulously to the scope of a defendant's invitation to participate in the organization. *Id.* at 705.

The Ninth Circuit reaffirmed the *Aguilar* analysis in *United States v. Mayer*, 503 F.3d 740 (9th Cir. 2007). In *Mayer*, the defendant challenged his criminal conviction for travel with the intent to engage in illicit sexual conduct based primarily on the undercover activities of an F.B.I. Special Agent in the North American Man/Boy Love Association (NAMBLA). The agent was not merely a passive member of NAMBLA, but instead "participated in the privacy committee, published an article in the newsletter, and drafted a policy statement." *Id.* at 749. The agent also not only monitored the NAMBLA's activities, but actively sought to identify individuals and provide those names to F.B.I. field offices. *Id.* at 746-50. Finally, the agent discussed traveling to foreign countries to have sex with boys, and constructed a fake travel agency web site as part of the scheme. *Id.* at 754. The Ninth Circuit affirmed the conviction and rejected defendant's First Amendment challenge. Using the two-part test articulated in *Aguilar*, the Court held that "to avoid running afoul of the First Amendment, the government must not investigate for the purpose of violating First Amendment rights, and must also have a legitimate law enforcement purpose." *Id.* at 752. Second, "the government must 'scrupulously adhere' to the scope of the invitation and seek a warrant whenever its investigative activities would constitute a search under the Fourth Amendment and potentially threaten protected associational interests." *Id.* at 753.

There is no question that S/A Colvin activities were performed in "good faith." S/A Colvin passively observed three public meetings. He neither participated in nor attempted to influence those meetings. Prior military outloads in the area had generated criminal activity, including trespass and destruction of government property. Groups of individuals had not only formed blockades on the public roads, but had pulled down

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 27
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

security gates and entered the Port of Olympia security area.  Colvin Decl. ¶11.  As a

member of the Coast Guard Field Intelligence Support Team, it was a critical part of S/A

Colvin's duties to provide threat assessments to the Coast Guard and partner agencies

regarding activities that might impact the nation's waterways, ports, and safety zone

surrounding such locations.  In fact, a Coast Guard supervisor specifically tasked him with

this duty.  *Id.* ¶ 13.  Prior military outloads at the Port of Olympia and neighboring ports

had generated substantial protest activity that required significant governmental costs.  S/A

Colvin's declaration sets forth that he had no involvement in preparing lists of names of

people to be arrested, that he did not participate in actually arresting anyone, and, in fact,

was not even in Olympia working on the days when the wide majority of arrests and

detentions occurred.  *Id.* ¶¶ 13-23.  Most telling, Plaintiffs' Second Amended Complaint

does not allege that S/A Colvin acted in bad faith.  The Amended Complaint alleges that

"These groups and individuals were targeted specifically because the Army, Coast Guard,

local law enforcement including the Olympia and Tacoma Police Departments, and other

agencies, did not like the content of the speech involved."  It does NOT allege that S/A

Colvin, personally, acted in bad faith by targeting any group or individuals based on the

content of their speech because, as Plaintiffs well know, there is no basis to make such an

allegation.

Not only is there no hint in the Second Amended Complaint of "bad faith" relating

to S/A Colvin's actions, but there is also no allegation whatsoever that he did not

"scrupulously adhere" to the scope of the invitation.  S/A Colvin attended three publicly

advertised meetings where anyone and everyone was welcome.  S/A Colvin walked on the

public streets in Olympia to observe public activities.  Plaintiffs' Second Amended

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 28
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   Complaint sets forth no factual allegations in its 49 pages that S/A Colvin in any way

2   exceeded the scope of the invitation.  In short, Plaintiffs provide not one scintilla of

3   evidence that S/A Colvin acted in bad faith or exceeded the scope of invitation and, thus,

4   they fail to meet their burden on either of the applicable First Amendment criteria.

**4.    The First Amendment right alleged was not clearly established
in the circumstances set forth the in the Second Amended
Complaint.**

7   Even assuming, *arguendo*, that Plaintiffs were somehow able to meet their burden

8   and establish that S/A Colvin personally violated their constitutional rights, dismissal on

9   qualified immunity grounds would still be appropriate because the rights were not "clearly

10   established."  In order to show that the rights claimed in the Second Amended Complaint

11   were clearly established, Plaintiffs bear the burden of showing that a reasonable official in

12   S/A Colvin's position would have understood that his conduct violated those rights.  *Galen*

13   *v. City of Los Angeles*, 477 F.3d 652, 665-66 (9th Cir. 2007).  The constitutional rights that

14   Plaintiffs assert must have been clearly established in a "particularized, and . . . more

15   relevant sense" at the time of S/A Colvin's actions.  *Creighton*, 483 U.S. at 640.  "In light

16   of pre-existing law the unlawfulness" of S/A Colvin's conduct must have been "apparent."

17   *Id.*  When Plaintiffs' constitutional claims are considered under this demanding standard, it

18   is evident Plaintiffs have not met their burden.

19   The analysis of whether the right was clearly established "must be undertaken in

20   light of the specific context of the case, not as a broad proposition."  *Saucier*, 533 U.S. at

21   201.  The right "must be defined at the appropriate level of specificity before a court can

22   determine if it was clearly established."  *Wilson v. Layne*, 526 U.S. 603, 615 (1999).  The

23   "contours of the right must be sufficiently clear that a reasonable official would understand

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 29
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1    that what he is doing violates that right." *Creighton*, 483 U.S. at 640.  *See also Saucier*,

2    533 U.S. at 202 (inquiry is whether "it would be clear to a reasonable officer that his

3    conduct was unlawful in the situation he confronted").  The unlawfulness of the officer's

4    action must be clear in light of the law in effect at the time the action was taken.

5    *Creighton*, 483 U.S. at 640.  "The mere metaphysical possibility that *some* plaintiff could

6    prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must

7    give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering

8    factual support for *these* claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174,

9    1177 (10th Cir. 2007) (court's emphasis).  "The salient question" is "whether the state of

10   the law" gave defendants "fair and clear warning" the conduct "was unconstitutional."

11   *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

12           In this suit, Plaintiffs' allegations wholly fail to state any federal constitutional

13   violation, let alone one that was "clearly established" at the relevant time.  Despite an

14   exhaustive search, there does not appear to be any federal courts at any level that have

15   afforded individuals the constitutional protections Plaintiffs seek in this case.  To the

16   contrary, Courts have uniformly upheld such law enforcement work as both proper and

17   necessary.

18           **5.      Assuming, *arguendo*, there was a violation, S/A Colvin**
                 **reasonably but mistakenly believed his conduct did not violate a**
19               **clearly established constitutional right.**

20           S/A Colvin could have made reasonable errors in the course of his work (there is no

21   evidence he did) and dismissal is still required under qualified immunity.  "This

22   accommodation for reasonable error exists because 'officials should not err always on the

23   side of caution' because they fear being sued."  *Hunter v. Bryant*, 502 U.S. 224, 229

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 30
DWT 14735127v2 0092030-000001

(1991) (quoting *Davis v. Scherer*, 468 U.S. 183, 196 (1984)).  Qualified immunity is designed to allow government agents to make decisions without fear of incurring personal liability in damages as a result of a mistaken judgment. *Malley v. Briggs*, 475 U.S. 335, 343 (1986).  Qualified immunity provides "ample room for mistaken judgments" and protects all government officials except "the plainly incompetent or those who knowingly violate the law." *Id.* at 341, 343.  Further, Government officials remain immune even if their conduct violated other non-constitutional standards, such as internal guidelines or regulations. *Davis v. Scherer*, 468 U.S. 183, 194-96 (1984).

Stated another way, a federal official is protected by qualified immunity when he reasonably, but mistakenly, believes that his conduct did not violate a constitutional right. The courts' recognition that reasonable but mistaken conduct is not a basis for a *Bivens* claim is especially important when the action is taken by a federal agent with statutory responsibility to ensure the safety of our ports and waterways, including shipments directly connected to the safety of United States Army personnel serving our country overseas in an armed conflict.

### 6.    Plaintiffs' fail to state a claim under the Posse Comitatus Act.

Plaintiffs' Second Amended Complaint alleges S/A Colvin "acted intentionally to violated [sic] the Posse Comitatus Act and Plaintiffs rights and protections thereunder and Defendants should be penalized in accordance with that Act." SAC ¶ 4.52.  This claim appears to rest on Plaintiffs' misplaced belief that S/A Colvin's actions in attending public meetings and observing protestors on public streets were a violation of the Posse Comitatus Act, and thus illegal.

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 31
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

The Posse Comitatus Act (PCA) provides that "[w]hoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the *Army or the Air Force* as a posse comitatus or otherwise to execute the laws *shall be fined under this title or imprisoned* not more than two years, or both." 18 U.S.C. § 1385 (emphasis added). The PCA was enacted during the Reconstruction Period following the Civil War to eliminate the then-common practice of civil law authorities recruiting federal troops to assist with local law enforcement problems. *United States v. Banks*, 539 F.2d 14, 16 (9th Cir. 1976).

Plaintiffs' claim alleging a violation of the PCA is fatally flawed, as a matter of law: first, the PCA is a criminal statute that does not authorize a private right of action; and second, the PCA does not govern the conduct of United States Coast Guard employees, who fall under the jurisdiction of the Department of Homeland Security.

> **a.    The Posse Comitatus Act does not authorize a private right of action.**

The plain language of the PCA establishes that it is a criminal statute. Nothing in the PCA even arguably provides a basis for civil action. Indeed, all the authorities that have considered this issue are uniform in concluding that "[t]here is no private right of action under the [Posse Comitatus] Act." *See* 141 A.L.R. Fed. 271 (2009) (collecting authorities); *accord Miale v. Tuolumne County Sheriff's Dep't*, No. 1:06-cv-1483, 2009 WL 3073922, *5 (E.D. Cal. Sept. 22, 2009) ("the Court is unable to find any [authority] that suggests that there exists a private right of action to enforce the Posse Comitatus Act" and holding that "Plaintiff may not bring a civil suit for monetary compensation for an alleged violation of the Posse Comitatus Act"); *Lamont v. Haig*, 539 F. Supp. 552, 558-59 (D.S.D. 1982) (the Act does not provide for a private right of action given that it is merely

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

a "bare criminal statute showing not the slightest indication of any legislative intent to create a private right of action," and noting further that "[n]o case appears to have ever . . . [made] a finding that such a cause of action . . . exist[s]").

These authorities apply with particular vigor here where Plaintiffs bring their claim for "violation of constitutional rights pursuant to *Bivens*," not for a violation of the PCA. Since *Bivens* only provides an implied right of action arising under the Constitution, not federal statutes, Plaintiffs clearly cannot rely on *Bivens* to provide a right of action for an alleged violation of the PCA.

Moreover, Plaintiffs lack standing to request that S/A Colvin "be penalized" for an allegedly criminal act. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("The Court's prior decisions consistently hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution. . . . [T]hese cases . . . demonstrate that, in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

b.   **The Posse Comitatus Act does not apply to the United States Coast Guard or its Agents.**

The plain language of the PCA states that it applies only to the Army and Air Force.[7] The United States Coast Guard is a hybrid agency, "a service in the Department of Homeland Security, except when operating as a service in the Navy." 14 U.S.C. § 1. The Coast Guard operates as part of the Department of Homeland Security, and only becomes a service in the Navy "upon declaration of war" or "when the President directs." 14 U.S.C.

---

[7] The Department of Defense made the PCA applicable to the Navy and the Marine Corps as a matter of Department of Defense Policy. *United States v. Chon*, 210 F.3d 990, 993 (9th Cir. 2000).

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 33
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

§ 3. Since its inception the Coast Guard has had unique, stand-alone, statutory law enforcement authority. 14 U.S.C. § 2.

A number of courts have confirmed that the PCA does not apply to Coast Guard personnel. In *United States v. Chaparro-Almeida*, 679 F.2d 423 (5th Cir. 1982), defendants attempted to suppress the seizure of over 70 tons of marijuana from their boat by the Coast Guard M/V *Polaris*, arguing the seizure violated the PCA. The Circuit ruled unequivocally and emphatically: "the Posse Comitatus Act is not applicable to the Coast Guard." *Id.* at 425. The court went on to note that the Coast Guard, unlike other branches of the armed forces, has specific statutory authority to enforce and assist with the enforcement of Federal laws. *Id.* at 425.

In *Jackson v. State*, 572 P.2d 87, 93 (Alaska 1977), the court considered a defendant's appeal challenging his conviction based on the argument that the state's use of Coast Guard personnel in a state drug investigation violated the PCA. The court concluded that the PCA "was not intended to cover the United States Coast Guard . . . . Given the unique dual organizational character of the Coast Guard and the various specific statutory mandates requiring it to enforce certain laws and regulations, we conclude it would be inappropriate to construe the Posse Comitatus Act as applying to the United States Coast Guard." *Id.* at 93.

### 7.   Plaintiffs' Injunctive Relief Claims Fail as a Matter of Law.

Plaintiffs' fifth prayer for relief seeks court supervised training and regulations for the "involved agencies and officers." Plaintiffs' sixth prayer for relief seeks an injunction preventing "state and Federal Actors from ever carrying such a campaign of illegal conduct again. " SAC Section 6, ¶¶ 5 and 6. Both claims suffer from two fatal flaws. First,

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 34
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   Plaintiffs sued S/A Colvin in his individual capacity, and it is black letter law that

2   injunctive relief is not available against a federal employee in his or her individual

3   capacity. Second, and equally damaging, Plaintiffs cannot establish that they possess

4   sufficient standing to pursue a claim for equitable relief because they cannot show a

5   sufficient likelihood of imminent future injury.[8]

6   **a.   No equitable relief in individual capacity suits.**

7   Plaintiffs chose to sue S/A Colvin in his individual capacity. That choice is fatal to

8   their prayer for injunctive relief. Every court of appeals to address the issue whether a

9   plaintiff alleging the violation of federal rights can sue a government official in an

10   individual capacity for equitable relief, including the Court of Appeals for the Ninth

11   Circuit, has concluded that there is no basis for such a suit. *See Wolfe v. Strankman*, 392

12   F.3d 358, 360 n.2 (9th Cir. 2004) ("[T]he declaratory and injunctive relief Wolfe seeks is

13   only available in an official capacity suit.").[9] These cases recognize that the government is

14   the real party in interest in a suit for non-monetary relief and that an employee's personal

15   interest in the litigation does not extend beyond whether he or she is required to pay

16   damages out of his or her own pocket.[10]

---

[8]  In addition, as set forth earlier, Plaintiffs do not state a claim for which any relief can be granted on their underlying causes of action, and therefore there is no basis for them to obtain injunctive relief.

[9] *See, e.g., Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) ("[T]he equitable relief Feit requests—a declaration that the policy is unconstitutional and an injunction barring the defendants from implementing the policy in the future—can be obtained only from the defendants in their official capacities, not as private individuals."); *accord Kirby v. City of Elizabeth*, 388 F.3d 440, 452 n.10 (4th Cir. 2004); *Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993); *Scott v. Flowers*, 910 F.2d 201, 213 (5th Cir. 1990); *Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987); *see also Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231-32, 1234-36 (10th Cir. 2005).

[10]  Although an injunction or declaratory judgment may affect how the employee performs his or her official duties in the future, a public servant has no legally cognizable *personal* interest in performing official duties in one fashion versus another.

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 35
DWT 14735127v2 0092030-000001

In light of the real party-in-interest distinction between individual- and official-capacity suits, an individual-capacity claim for equitable relief is not legally viable because it names "improper defendants." *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989). Only by acting as a government official (not as an individual), can a defendant-employee comply with a court decree to alter government policy or practice. A defendant employee who stands before the court in his or her capacity as an individual has no such ability. *See Wolfe*, 392 F.3d at 360 n.2. Therefore the equitable relief Plaintiffs seek here "can be obtained only from the defendants in their official capacities, not as a private individuals." *Feit*, 886 F.2d at 858.

### b.   Plaintiffs have failed to establish standing for prospective relief.

Article III limits the subject matter jurisdiction of federal courts to actual "cases or controversies." U.S. Const. art. III, § 2; *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). The case or controversy requirement is not satisfied unless a plaintiff meets his or her burden of establishing standing. *Raines v. Byrd*, 521 U.S. 811, 818-19 (1997). To satisfy the standing requirement to seek *retrospective* relief, such as damages, a plaintiff must plead that (1) plaintiff suffered an injury in fact that is concrete and not conjectural or hypothetical, (2) the injury is fairly traceable to the actions of the defendant, and (3) the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006).

When a plaintiff seeks *prospective* relief, such as an injunction, however, a plaintiff must also establish "a sufficient likelihood that he [or she] will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *accord Gest*, 443

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 36
DWT 14735127v2 0092030-000001

F.3d at 1181. That is, a plaintiff must establish a "certainly impending" future injury. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). Allegations of *past* injury are insufficient for a plaintiff to obtain injunctive relief; rather, there must be a an actual impending future injury that would be redressed by the specific equitable relief sought. *Whitmore*, 495 U.S. at 158-59; *Lyons*, 461 U.S. at 102-03; *O'Shea v. Littleton*, 414 U.S.488, 495-96 (1974).

Because injunctive relief is prospective, courts are particularly vigilant in applying the injury-in-fact and redressability requirements to ensure that a plaintiff is facing certain and imminent future harm that an injunction could avert. *See Lyons*, 461 U.S. at 102-04 (plaintiff must show substantial likelihood of concrete future harm that would be redressed by equitable relief); *Bird v. Lewis & Clark Coll.*, 303 F.3d 1015, 1020 (9th Cir. 2002) (no standing to seek declaratory relief where plaintiff failed to "demonstrate a real or immediate threat" that defendant would again subject plaintiff to unlawful conduct); *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1041 n.1 (9th Cir. 1999) (en banc) (satisfying the standing requirement to seek damages is not alone sufficient to establish standing to seek equitable relief).

The requirement of a certain and imminent threat of future injury as a jurisdictional prerequisite to equitable relief is aptly illustrated by the Supreme Court's decision in *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Plaintiff in *Lyons* sued the City of Los Angeles and four of its police officers for injuries he allegedly sustained when he was stopped for a traffic violation and placed in a chokehold. *Id.* at 97-100. The Supreme Court reversed the lower courts' preliminary injunction barring the use of chokeholds, holding that the plaintiff lacked standing to seek equitable relief because he failed to show

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 37
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

that "he was likely to suffer future injury from the use of the chokeholds by police officers." *Id.* at 105. The Court held that, even if the plaintiff's prior injury afforded him standing to seek retrospective relief in the form of damages, it did "nothing to establish a real and immediate threat" of future similar unlawful conduct by officers against him. *Id.* In addition, the *Lyons* Court made clear that "a real and immediate threat" of future injury could not be demonstrated with broad, conclusory allegations. Indeed, the Court rejected the allegation "that the police in Los Angeles routinely apply chokeholds in situations where they are not threatened by the use of deadly force" as falling "far short of the allegations that would be necessary to establish a case or controversy between these parties." *Id.*

Plaintiff alleges that, "[t]o Plaintiffs' knowledge, the spying, without Towery, continues to this day and continues to disrupt and chill the First Amendment protected activities of PMR." SAC ¶ 2.64. The Supreme Court, however, recently reaffirmed that courts should *not* accept "[t]hreadbare recitals of the elements of a cause of action, supported by *mere conclusory statements*." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasis added); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Instead, a complaint must contain sufficient "*factual allegations*" "to raise a right to relief above the speculative level . . . ." *Id.* at 555.

Here, Plaintiffs' claims for injunctive fail because Plaintiffs do not allege any *facts* that show ongoing surveillance. Rather, Plaintiffs merely assert, without more, that

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 38
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

"spying . . . continues to this day . . . ." SAC ¶ 2.64. Such a broad and unsupported allegation is far less than the Supreme Court rejected as insufficient in *Lyons*.

In fact, it was just such threadbare, conclusory pleading that led at least one court to dismiss a suit for injunctive relief. *See Consejo Puertorriqueno Por La Paz v. Director FBI*, 458 F. Supp. 1041 (D.D.C. 1978). In *Por La Paz*, , the court based its decision on three findings relevant to Plaintiffs' injunctive relief prayer before this court. *First*, the court concluded that the allegation that "defendants have continued their 1967 activities in 1978" was simply a "general conclusory allegation[]" that did not state a justiciable claim. *Id.* at 1042. *Second*, the court found that an allegation that the plaintiffs remained "under investigation" was insufficient because "[m]ere surveillance . . . , without more, cannot establish specific injury or treat of injury mandated by *Laird v. Tatum*[.]" *Id. Third*, the court found that the plaintiffs' allegations of recent events that could constitute more than "mere surveillance" failed because the plaintiffs did not provide any basis for attributing the recent conduct to the defendants. *Id.* at 1043. Similarly, here Plaintiffs allege, without reference to specific actors, that the allegedly wrongful surveillance continues. But, such bare bones allegations fall far short of stating a justiciable claim.

Finally, even if such allegations were sufficient to show that "spying" continues, Plaintiffs cannot establish that the temporal component of standing is satisfied. *See Whitmore*, 495 U.S. at 158-59 (plaintiffs must establish "certainly impending" future injury). First, even if surveillance is ongoing, surveillance itself is not inherently unconstitutional or unlawful. *See United States v. Knotts*, 460 U.S. 276, 281 (1983). Second, Plaintiffs must establish that the *injury*—not just the government conduct—is certainly impending. *Id.*; *Lyons*, 461 U.S. at 102-03; *O'Shea*, 414 U.S. at 495-96.

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 39
DWT 14735127v2 0092030-000001

Plaintiffs allege no impending injury and, indeed, seem to conflate the government conduct with the supposed injury—the supposed ongoing government surveillance *is* the injury. Accordingly, Plaintiffs have not established standing to support their prayers for injunctive relief against Agent Colvin.

## VI.    SUMMARY JUDGMENT

As set forth above, S/A Colvin is entitled to dismissal under Fed. R. Civ. P. 12(b)(6).  In the event the Court determines that any of Plaintiffs' claims withstands scrutiny under Rule 12(b)(6), S/A Colvin alternatively seeks summary judgment pursuant to Rule 56, on the ground of qualified immunity.

A party against whom a claim is asserted may move "at any time . . . with or without supporting affidavits for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  A genuine issue of material fact exists where there is sufficient evidence for a reasonable fact finder to find for the nonmoving party. *Liberty Lobby*, 477 U.S. at 248.  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52.  The moving party bears the burden of showing that there is no evidence that supports an

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 40
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the movant has met this burden, the non-moving party then must show there is a genuine issue of fact for trial. *Liberty Lobby*, 477 U.S. at 250.

In connection with the Rule 56 motion, S/A Colvin respectfully refers the Court to the statement of facts, the Second Amended Complaint, and S/A Colvin's signed declaration (filed contemporaneously herewith).  These submissions establish there was no constitutional violation, S/A Colvin had no personal involvement with any allegations supporting Plaintiffs' claims, nor was there any violation of a clearly established constitutional right.

Plaintiffs have failed to allege any facts showing S/A Colvin's ***personal*** involvement in the actions alleged, as required for liability under *Bivens*.  In addition, S/A Colvin is entitled to qualified immunity because Plaintiffs fail to allege a violation of a clearly established right.

## VII.   CONCLUSION

For the foregoing reasons, S/A Colvin respectfully requests the Court to dismiss him for this action with prejudice under Fed. R. Civ. P. 12, or, in the alternative, to grant him summary judgment under Fed. R. Civ. P. 56.

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 41
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1    DATED this 30th day of September, 2010.

2                                    Davis Wright Tremaine LLP
                                     Attorneys for Defendant Clint Colvin
3

4
                                     By _s/ Mark N. Bartlett_____
5                                        Mark N. Bartlett, WSBA #15672
                                         Suite 2200
6                                        1201 Third Avenue
                                         Seattle, Washington  98101-3045
7                                        Telephone: (206) 757-8298
                                         Fax: (206) 757-7700
8                                        E-mail: markbartlett@dwt.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record who receive CM/ECF notification, and that the remaining parties shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 30th day of September, 2010.

Davis Wright Tremaine LLP
Attorneys for Defendant Clint Colvin

By _s/ Mark N. Bartlett_____
Mark N. Bartlett, WSBA #15672
Suite 2200
1201 Third Avenue
Seattle, Washington  98101-3045
Telephone: (206) 757-8298
Fax: (206) 757-7700
E-mail: markbartlett@dwt.com

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 43
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

2

3

## DECLARATION OF CLINTON D. COLVIN

I, Clinton D. Colvin, declare:

4

5

6

1.      On June 30, 2010, I retired from my civilian position as a Special Agent with the Coast Guard Investigative Service after reaching the age of 57, the mandatory retirement age for all federal law enforcement agents.

7

8

9

2.      In March 1973, I voluntarily enlisted in the United States Navy and served five years on active duty.  I was honorably discharged in January 1978 and immediately joined the United States Naval Reserve.  I retired from the Naval Reserve in May 1995.

10

11

3.      In June 1980, I graduated from Seattle University with a Bachelor of Arts degree in Political Science.

12

13

4.      In May 1985, I was hired as a civilian Special Agent by the Naval Investigative Service.

14

15

16

17

18

19

20

21

22

5.      In May 1990, I was hired as a civilian Special Agent for Coast Guard Investigations.  In 1996, the agency name was changed to Coast Guard Investigative Service (CGIS).  I am aware that CGIS special agent authority is set forth in 14 U.S.C. § 95, and provides for Coast Guard special agents to conduct investigations of actual, alleged or suspected criminal activity; carry firearms; execute and serve warrants; and make arrests.  I am further aware that, unlike other branches of the Armed Forces, the Coast Guard has been provided specific statutory authority to assist federal, state , and local authorities in the execution of their responsibilities, to include administrative and criminal investigations (14 U.S.C. § 141).

23

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 44
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

6.     In January 2003, I was transferred from Seattle to Miami, Florida.  I remained working in Miami until February 2007, when I was transferred back to Seattle at my request.

7.     After returning to Seattle in 2007 I was assigned to serve on Coast Guard Field Intelligence Support Teams (FIST).  I was the only CGIS Special Agent working at this FIST.  When the Ports and Waterways Safety Act was passed (33 U.S.C. § 25, et al.), the Coast Guard was given primary responsibility for ensuring the safety of ports, waterways, and coastal areas against maritime threats.  The Seattle FIST Standard Operating Procedure manual stated in its first paragraph: "FIST Seattle's primary function is to collect law enforcement intelligence on all maritime threats, including exchange of information through relationships with government and private entities; conduct first order analysis; disseminate tactical and operational national intelligence and law enforcement intelligence."

8.     A significant part of my job requirement as the CGIS Special Agent assigned to the FIST was to establish constructive relationships with local, state and federal agencies, and private entities to institute the mandatory information sharing requirements imposed upon federal law enforcement agencies following September 11 terrorist attacks.  The July 2006 FIST Tactics, Techniques and Procedures Manual stated that a "critical role" was to serve as the Coast Guard liaison to "other federal, state and local law enforcement and intelligence entities. . . FISTs should develop strong ties with regional partners in order to enhance cooperation and facilitate information flow."

9.     In March 2007, the United States Army sent vehicles and equipment for the 4th Brigade, Second Infantry Division (a Fort Lewis Stryker Brigade) to Iraq using the USNS *Soderman*.  The military outload (MOL) shipped through the Port of Tacoma.  As part of my work with the FIST, I provided general intelligence assistance to this MOL.  I did not attend

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 45
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   any meetings of any protest groups related to this MOL. My intelligence work focused on

2   monitoring public source web sites and personal observations at public areas around the Port

3   of Tacoma area aimed at ensuring the integrity of the Coast Guard safety zone. I am aware

4   that approximately 37 individuals were arrested in connection with this MOL. I had no part

5   in those arrests. I am aware that the City of Tacoma spent over $500,000 to respond to the

6   protests and that the Department of Defense eventually repaid the city for these costs.

7       10.    In May 2007, the United States Army sent vehicles and equipment in support of

8   a Fort Lewis Stryker Brigade to Iraq using the USNS *Cape Henry*. The military outload

9   (MOL) shipped through the Port of Grays Harbor. As part of my work with the FIST, I

10  provided general intelligence assistance to this MOL. I did not attend any meetings of any

11  protest groups related to this MOL. My intelligence work focused on monitoring public

12  source web sites and personal observations at public areas around the Port of Grays Harbor

13  area aimed at ensuring the integrity of the Coast Guard safety zone. I had no connection with

14  any individual(s) who were arrested in connection with this MOL.

15      11.    In early September 2007, I became aware that the USNS Brittin would be

16  returning from Iraq carrying equipment in need of maintenance connected with the Fort

17  Lewis Stryker Brigade. I was further aware that the USNS Brittin was scheduled to unload at

18  the Port of Olympia. Although I was in Florida at the time, I was aware that in May 2006, a

19  shipment of military equipment from Fort Lewis to Iraq on board the USNS Pomeroy that left

20  through the Port of Olympia had generated strong protests, including an incident where

21  protestors pulled down a metal security gate and entered the Port of Olympia security area.

22  My supervisor, Lieutenant Commander Christy Howard, specifically spoke to me about the

23  seriousness of the prior security zone breach in May 2006 and the Coast Guard Maritime

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 46
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   Safety and Security Team's (MSST) need for intelligence and information to prevent future

2   breaches to the Port of Olympia's maritime security zone.

3       12.    From September 28 through October 9, 2007, I was transferred to Hawaii for a

4   temporary assignment.

5       13.    On October 16, 2007, I was asked by the Seattle Coast Guard Commander to

6   prepare a threat assessment that would identify any potential threats to Coast Guard support

7   of the USNS Brittin's unloading operation scheduled for November 2007. Part of my work

8   focused on monitoring open source web sites, something I did routinely regardless of whether

9   there was a specific operation under consideration.

10      14.    On November 4, 2007, at approximately 8 p.m., I attended an open, public

11  meeting at the Traditions Café in Olympia that was publicly advertised. (This was the first

12  "activist" meeting I had attended in the Northwest Region related to military shipments to the

13  Middle East.) When I arrived at the Traditions Café, it was open to the public. Everyone who

14  wanted to enter was allowed in, and everyone who wanted to attend the meeting was allowed

15  to attend, from what I could observe. At some point during the meeting, a paper was passed

16  around and attendees were asked to provide their name, phone number, and email address. I

17  provided a false name, and a non-government email address and phone number that I

18  maintained. During the meeting, I made no suggestions as to further actions or in any way

19  attempted to influence or disrupt the attendees. I was a passive observer. During the

20  meeting, one of the activists asked for volunteers. I intentionally did NOT volunteer or

21  become involved in the management of the group. There was a second public meeting at the

22  Traditions Café in Olympia on Monday, November 5, 2007. It was similar to the previous

23

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 47
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1  night's meeting in that it was publically advertised and open to the public. Again, I was a

2  passive observer, and I took no actions to attempt to influence or disrupt the attendees.

3       15.    On Wednesday, November 7, 2007, there was another public meeting that was

4  publicly advertised held at the Olympia Free School. (A copy of the public notice for this

5  meeting is still available on-line and is set forth at Exhibit 2). Once again, everyone who

6  wanted to enter was allowed in to attend the meeting, from what I could observe. During the

7  meeting, I was a passive observer and made no suggestions as to further actions or in any

8  way attempted to influence or disrupt the attendees.

9       16.    From November 4-8, 2007, I spent a great deal of time in Olympia watching the

10 various protests in an attempt to prevent any breach of the Olympia Port Security zone. I was

11 present at a number of protests and provided real-time intelligence at various points regarding

12 actions aimed at blocking streets and/or destruction of property. I never provided a list of

13 names or identifications of individuals to be arrested. My duties were to observe and, on

14 almost a nightly basis, to provide updated intelligence information to the USCG and to law

15 enforcement partners with whom we had an information sharing relationship. At one of the

16 meetings I heard a speaker make reference to the need for individuals to take real action to

17 make their point to the Army. This speaker then made reference to the Army's possible use

18 of railroad tracks to move equipment from the port to Fort Lewis. I passed this information

19 on to Coast Guard authorities. On November 14, 2007, law enforcement officials discovered

20 that unknown individual(s) had poured a concrete mixture on a section of railroad tracks that

21 intersected 7th Avenue SE blocks from the Port of Olympia. (Photograph set forth at Exhibit

22 3). This was the kind of intelligence that was my responsibility to determine and pass on to

23 ensure the safety of the areas involved.

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 48
DWT 14735127v2 0092030-000001

17.     On Monday, November 5, the USNS Brittin arrived at the Port of Olympia.  On Thursday, November 8, 2007, at approximately 2 p.m., the USNS Brittin finished its offload and left the Port of Olympia.  As a result, Coast Guard concern decreased substantially.

18.     On the morning of Friday, November 9, 2007, I provided a personal briefing to the Coast Guard Commander in Seattle regarding the Olympia MOL.  After the meeting, I took annual leave for the rest of the day.

19.     I was on annual leave November 10 -12, 2007, (Saturday, Sunday and Monday).  I was not in Olympia during any of those days.  Nor was I gathering intelligence.

20.     On November 13, 2007, I returned to work in Seattle.  I was not in Olympia during that day or night.  I played no part in any of the arrests that occurred during that day, or any subsequent days.  I did not direct or supervise anyone involved in those arrests and, to the best of my knowledge no Coast Guard personnel were involved in the arrests.

21.     Since my return to the Northwest Region in 2007, my Coast Guard duties have centered exclusively on collecting law enforcement information that was integrated into Threat Assessments and Field Intelligence reports.  I have not participated in any criminal investigations.  In addition, I have never made any lists identifying individuals who should be arrested; nor have I made any suggestions, oral or written, regarding who should be arrested.

22.     Since my return to the Northwest Region in 2007, I have never directed other younger members or other employees of CGIS to engage in any undercover or surveillance activity aimed at the Port Militarization Resistance or related groups, nor have I supervised any CGIS employees engaged in such activities.

23.     The only purpose I had in attending meetings and monitoring public source web sites was to gain accurate information and intelligence to better ensure the safety and security

DEFENDANT CLINTON D. COLVIN'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6), OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT (3:10-cv-5018 RBL) — 49
DWT 14735127v2 0092030-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

of the Coast Guard and its responsibilities.  I had no intention of interfering with any

individuals' constitutionally protected rights.  I was properly and lawfully fulfilling my duties

in gathering intelligence for the Threat assessments and Field Intelligence reports that I was

directed to work on.

I declare under penalty of perjury under the laws of the United States of America that

the foregoing is true and correct.

Executed this 24th day of September 2010, at Seattle, Washington.


CLINTON D. COLVIN

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700