THE HONORABLE RONALD B. LEIGHTON

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| JULIANNE PANAGACOS, ET AL., | ) NO. **3:10-cv-5018** RBL |
| | ) DECLARATION OF DREW HENDRICKS IN |
| | ) SUPPORT OF PLAINTIFFS' RESPONSE |
| | ) TO DEFENDANT COLVIN/USA'S MOTION |
| Plaintiffs, | ) TO DISMISS OR FOR SUMMARY |
| | ) JUDGMENT |
| v. | ) |
| | ) |
| JOHN J. TOWERY; THOMAS R. RUDD | ) Noted for November 19, 2010 |
| CLINT COLVIN; CITY OF OLYMPIA | ) |
| TOR BJORNSTAD, et al., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

Panagacos v. Towery, **3:10-cv-5018** RBL et al-Declaration of Drew Hendricks in Support of Plaintiffs' Response to Colvin's Dismissal Motion           1

LAWRENCE A. HILDES                                                                                                1
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Attorney for Plaintiffs

1) I declare the following of my own personal knowledge, and if called upon to do so, could so competently testify.

2) That I, DREW HENDRICKS, am not a party in this matter, am over the age of 18 years, and am a resident of OLYMPIA, WA.

3) I became involved with Port Militarization Resistance in Olympia after March, 2004.

4) At the time, it was an un-named activity which took up part of the meetings of Olympia Movement for Justice and Peace whenever military ships were present in the Port of Olympia.  The organizing had no budget and had no established membership or separate communications.

5) My primary role in PMR has been as a coordinator of intelligence estimates and observations to support intelligence estimates.

6) I have filled this role since before Port Militarization Resistance named itself in June, 2006.  Once we became a separate group, this role included coordination of telephone sources (tips), volunteer observers (directed patrols), radio communications intercepted legally with a marine band scanner at critical times, and phone bills obtained from the Port of Olympia.

7) At no time have I been paid for my services as an intelligence coordinator or observer.

Panagacos v. Towery, <u>3:10-cv-5018</u> **RBL** et al-Declaration of Drew Hendricks in Support of Plaintiffs' Response to Colvin's Dismissal Motion    2
LAWRENCE A. HILDES    2
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Attorney for Plaintiffs

8) I have been involved in gathering and preparing intelligence briefings since 1986.

9) I was trained in how to reconstruct shredded documents, how to audit trash cans and dumpsters for data, how to conduct a foot surveillance and how to conduct an automotive surveillance, how to set a watch on a fixed position and how to select, test, and clear a dead drop and a live drop.  I was also trained in phone security (don't use one) and how to maintain security culture, though we did not call it that in those days.

10) I have been a copwatcher since 1989.  I began collecting the identities and tactics of police officers while I was in College at Southern Illinois University, including the activities of Southern Illinois Enforcement Group, Federal Bureau of Investigation, and Drug Enforcement Agency agents in Carbondale, Illinois.  O was never arrested or questioned during any of these activities

11) I have been a copwatcher in public in Olympia since January, 2003.

12) Before this, I had collected police and Federal Agent identities since 1998 in Washington State, including FBI agents in Seattle, Tacoma, and Olympia, Washington.

Panagacos v. Towery, **3:10-cv-5018** **RBL** et al-Declaration of Drew Hendricks in Support of Plaintiffs' Response to Colvin's Dismissal Motion   3
LAWRENCE A. HILDES   3
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Attorney for Plaintiffs

13) Occasionally, beginning in 2006, I have published my work in this area of research by specifying who agents are, and in general where they live and how they operate.

14) At all times in my work in this area, I have been a critic of the "national security state" and "homeland security" as being serious if not fatal breaches of the laws and Constitution of the United States.

15) My work has been focused on documenting real and continuing criminal acts by government agents against the people of the United States.

16) I found out about John Jacob Towery and Clint Colvin from a set of emails obtained by Brendan Dunn, which he shared with me earlier this year (2009).

17) We knew from a Summary Report written and disseminated by Olympia Police Commander Tor Bjornstad that someone from Army Intelligence and someone from the Coast Guard were spying on PMR and related groups and individuals and obtaining information from private discussions and meetings and passing that information on to the Olympia Police Department.

18) From the e-mails and other documents Brendan Dunn obtained, we now  now the individual from Army Intelligence to be John J. Towery II.

Panagacos v. Towery, **3:10-cv-5018** **RBL** et al-Declaration of Drew Hendricks in Support of Plaintiffs' Response to Colvin's Dismissal Motion    4
LAWRENCE A. HILDES    4
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Attorney for Plaintiffs

1   19) As I catalogued the persons found in those emails, I created a database of names
2       of individuals involved in countering Port Militarization Resistance.  It was during
3       this activity that I recognized that John Towery, a person whose identity I found in
4       the emails, was actually a person I knew as "John Jacob."

5   20) I had first met "John Jacob" (as he called himself) in September 2007, and worked
6       closely with him on estimates of military movements in the Salish Sea region,
7       especially Fort Lewis.

8   21) On two occasions, "John Jacob" took me for a ride in his car, a dark blue Pontiac
9       Aztek. "John Jacob" had told me he lived in a certain town near Tacoma and Fort
10      Lewis (Graham, WA), and the person John J Towery lived very near to this location
11      (Spanaway, WA).

12  22) I found John Jacob Towery's home address in public records, and verified that
13      the car I was familiar with was parked at the home listed in those records.  I
14      recognized the car from its maker, from its unusual shape, and from its color, but I
15      was not satisfied that it had to be the same car because I could find no notes of
16      the license plate number from my first or second trip with him.

17  23) In order to photograph his face and confirm his use of the vehicle (of which I now
18      had a picture), I set up a meeting with "John Jacob" in Olympia in late July 2009
19      and had a friend photograph his motorcycle (a separate vehicle) in the street in

Panagacos v. Towery, **3:10-cv-5018** **RBL** et al-Declaration of Drew Hendricks in Support of Plaintiffs'   5
Response to Colvin's Dismissal Motion
LAWRENCE A. HILDES                                                                                              5
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Attorney for Plaintiffs

1   Olympia while I distracted John Towery.  This motorcycle turned out to match the

2   vehicle specifications published online as belonging to "John Towery" of

3   Spanaway, Washington, and also matched the maker, as well as the model, listed

4   in that source, and was seen by me to be ridden by the man we knew as "John

5   Jacob," and it also had a license plate holder which named the motorcycle club he

6   belonged to, which had published its specifications linked to his name.

7   24) I published John Jacob Towery's name(s) and role at an Olympia City Council

8   meeting.  I also published my allegations of John Towery's role in independent

9   media outlets such as the Works in Progress newspaper, and the Seattle

10   Indymedia, as well as Olyblog.net and on various email lists.

11   25) Towery later met with two persons known to me and admitted to them his role in

12   spying on Port Militarization Resistance.

13   26) When The Olympian newspaper and Democracy Now! Television news program

14   asked Fort Lewis about the allegation that John J Towery was "John Jacob" the

15   public affairs office admitted that he worked for them "in a sensitive law

16   enforcement role."

17   27) The harm done by any spy is difficult to quantify, so much of it is intangible.  The

18   trust and affection necessary for any shared, risky political activity to succeed is

19   easily shattered by the notion that people are capable of lying to, and informing

Panagacos v. Towery, **3:10-cv-5018** **RBL** et al-Declaration of Drew Hendricks in Support of Plaintiffs' Response to Colvin's Dismissal Motion
LAWRENCE A. HILDES
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Attorney for Plaintiffs

6

6

1 upon, one another.  In this case, it is easy for the sponsor of the spies to win either
2 way (whether caught spying or left undetected), and it is certainly no danger to
3 practice sloppy tradecraft in conducting this kind of spying upon unarmed US
4 persons who explicitly advocate a nonviolent ethic.

5 28) This is the most important damage government interference in First Amendment
6 activities can accomplish: the inability or unwillingness of Americans to confront the
7 illegal actions of their own government.

8 29) The second kind of damage is more direct; the spy in this case accepted tasks
9 such as obtaining rooms for meeting in the Tacoma area, closer to the Port of
10 Tacoma, which was then being used by the military more often than the Port of
11 Olympia, and John Jacob Towery never completed the task of obtaining a venue at
12 any time.  Others had to organize last minute places to hold small, poorly
13 advertised meetings because of this failure.  At those meetings, organizers leaving
14 the venue were followed by a marked police officer in an apparent act of
15 intimidation.  By impacting our ability to meet, and the quality of our meeting
16 spaces, John Towery essentially helped to make sure that a viable and
17 independent PMR did not arise in Tacoma.  His sponsors will point to that
18 sentence with pride.

Panagacos v. Towery, **3:10-cv-5018** RBL et al-Declaration of Drew Hendricks in Support of Plaintiffs' Response to Colvin's Dismissal Motion   7
LAWRENCE A. HILDES   7
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Attorney for Plaintiffs

30) Towery's spying is barred by the Posse Comitatus Act which prohibits the military from acting in a civilian law enforcement role and from spying on or arresting civilians except (as to arrests only) on military bases after which they must be released or turned over to civilian law enforcement as soon as possible.  It is a crime for military personnel to violate the Posse Comitatus Act

31) The third kind of damage is also direct: John Towery was trusted to become one of four or five Listserv administrators.  In this position, he was able to copy out an electronic list of all persons subscribed to the Olympia Port Militarization email list.  It can only be assumed that he did so.  It might also be that he placed others onto that list who would be co-spies with him, though an effort was made to uncover and audit this kind of activity and this has not been confirmed.

32) Towery did admit to Brendan Dunn that there were at least two other operatives spying on PMR and other groups in Olympia.

33) The fourth kind of damage is also direct, though less important than the other three: John Jacob Towery, Clint Colvin of the Coast Guard, and others knew how we observe Interstate 5, Fort Lewis, and the Port of Olympia in some detail, and knew probably 1/3 of the personnel involved in PMR-Intelligence activities.  His knowledge of our observation techniques and his ability to call and consult on what

Panagacos v. Towery, **3:10-cv-5018** **RBL** et al-Declaration of Drew Hendricks in Support of Plaintiffs' Response to Colvin's Dismissal Motion        8
LAWRENCE A. HILDES                                                                                                                                                  8
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Attorney for Plaintiffs

1   analysts were thinking helped his sponsor to avoid our attempts at enforcing the

2   laws and treaties of the United States.

3   34) Finally, because of Towery, Colvin, and other's spying and the actions of the

4   Olympia Police in acting on the fruits of that spying, Activists were arrested on

5   November 13, 2007 and other days in November of 2007 not because of anything

6   they had done, but because of statements from Towery and Colvin as to what they

7   might do based on their spying and analysis.

8   35) Their spying observations were transmitted by Towery's supervisor at Force

9   Protection for Ist Corps at Ft Lewis as Force Protection Intelligence reports and

10   Threat Assessments that were sent to various law enforcement personnel and

11   other officials at the City of Olympia and Thurston County, as well as other

12   jurisdictions.

13   36) Tor Bjornstad of OPD received those reports.

14   37) Some of the reports were sent out by the Washington State Joint Analytical Center

15   (WAJAC).

16   I declare under penalty of perjury under the laws of the State of Washington that the

17   foregoing is true and correct.

18

Panagacos v. Towery, **3:10-cv-5018** **RBL** et al-Declaration of Drew Hendricks in Support of Plaintiffs' Response to Colvin's Dismissal Motion     9

LAWRENCE A. HILDES     9
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Attorney for Plaintiffs

1   Signed on November 16th, 2010 at OLYMPIA, WA

2   _____
3   DREW HENDRICKS
4

5

Panagacos v. Towery, **3:10-cv-5018** RBL et al-Declaration of Drew Hendricks in Support of Plaintiffs' Response to Colvin's Dismissal Motion     10
LAWRENCE A. HILDES     10
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Attorney for Plaintiffs