THE HONORABLE RONALD B. LEIGHTON

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON**

**JULIANNE PANAGACOS, ET AL.,**

      **Plaintiffs,**

**v.**

**JOHN J. TOWERY; THOMAS R. RUDD;
CLINT COLVIN; CITY OF OLYMPIA
TOR BJORNSTAD, et al.,**

      **Defendants.**

 ) **NO.  3:10-cv-5018 RBL**
 ) **PLAINTIFFS' RESPONSE TO**
 ) **DEFENDANT TOWERY'S MOTION**
 ) **TO DISMISS PURSUANT TO 12(B)(6) OR**
 ) **MOTION FOR A MORE DEFINITE**
 ) **STATEMENT**
 )
 )
 ) **Noted for February 11, 2011**
 )
 )
 )
 )
 )

JULIANNE PANAGACOS, MALLORY HAGEL, STEPHANIE SNYDER, EMILY COX,

MOLLY PORTER, ANDREA ROBBINS, JULIA GARFIELD, ERAN RHODES, ELI EVANS,

CHRIS GRANDE, DAVI RIOS, BRENDAN DUNN, GLEN CRESPO, and JEFFERY

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES                                                                                                                    1
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

BERRYHILL the Plaintiffs herein, by and through their attorney, hereby respond to Defendant

TOWERY/USA's Motion to Dismiss or in the Alternative for a more definite statement as

follows:

1) Plaintiffs have met their burden of pleading, at this stage of the litigation sufficient
   facts that, if proven true, as Plaintiffs are confident they will be, would make
   Defendant liable for the violations of law alleged in the complaint.

2) Plaintiffs have pled sufficient facts with specific specificity to properly put
   Defendants(s) on notice of their violations of law so that they may respond.

3) Defendant misstates and exaggerates the applicable law in this matter to give an
   inaccurate statement as to the reasonableness of Plaintiffs' case.

4) It has now become apparent and Plaintiffs attached to their response to Defendant
   United States' second motion to dismiss proof obtained through state Public Records
   Act requests by a third party that Defendant Towery was acting as an agent of the
   Pierce County Sheriff's Office, clearly a state rather than a Federal Actor, and,
   therefore to the extent that he was so acting, the Westfall Act does not apply and he is
   a proper party as to torts and state causes of action.


In contrast, with both Defendants Towery and Defendant Rudd's contentions, Plaintiffs

have pled detailed facts and allegations concerning the activities of Defendants Rudd and

Towery that, if true as Plaintiffs strongly believe,  and the court generally does not

examine proof and the likelihood of proof at this state, would result in liability.

Defendants grossly overstate the pleading standards for Plaintiffs under Iqbal and

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES                                                                                    2
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

Twombly.

## I.   Introduction and Statement of Facts (as cited in the complaint plus new information)

Plaintiffs were engaged in First Amendment protected activity protesting against use of their local public ports for military shipments from and to the US wars in Iraq and Afghanistan, as such they were active with Port Militarization Resistance(PMR), a movement created to voice such objections through public demonstrations.  At least as early as February of 2007, according to available public documents, various law enforcement and military organizations began covert surveillance on PMR and taking systematic steps to penalize participants and attempted participants in PMR demonstrations from doing so, and to disrupt and prevent peaceful, legal demonstrations from taking place causing significant harm to those targeted.  Those targeted were identified by the covert surveillance.

The following statement of facts is taken directly from Plaintiffs' Third Amended Complaint.

2.3 No later than March of 2007 Defendant JOHN J. TOWERY began illegally spying on Plaintiffs, PMR, and others on behalf of the US Army and under orders from Defendant Thomas Rudd of the Force Protection Division of I Corps of the US Army at Ft. Lewis.

2.4 Towery approached individuals associated with PMR Students for a Democratic Society, and other groups in Olympia and Tacoma and lied about who he was and why he was there.

2.5 Towery befriended Brendan Dunn, and others, with outright lies about his name, who

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

3

he was, and why he was there.

2.6 In March of 2007 Towery began illegally spying on organizing efforts for peaceful demonstrations against the use of the Port of Tacoma for military shipments.  Towery and Defendant Rudd influenced and directed tactics that were employed by the Tacoma Police Department and other agencies to disrupt the protests without cause or justification.  This included covertly breaking the security of and joining a confidential Privileged Attorney-client listserve for the Defense team of a related criminal case dating from June of 2006.  Defendant Herbig acted to illegally and covertly join the same listserve.  Both of these Defendants, and Gary Smith and others of the Tacoma Police Department did so for purposes of gaining unfair advantage in a criminal matter then going to trial.

2.7 In May of 2007, Towery intensified his infiltration of PMR attending numerous private meetings, engaging in lengthy discussions with activists, persuading activists to attend events and engage in tactics that they had not previously intended, and in conjunction with other agencies and individuals targeting activists for harassment and arrest in Olympia, Aberdeen, and in between the two places.

2.8 A list was developed and kept of license plates of individuals identified as key organizers, accurately or not.  Those individuals were followed, stopped, cited, arrested, and otherwise harassed

2.9 Much of this activity was in conjunction with the Tacoma Police Department, Pierce County Sheriff's Office, Thurston County Sheriff's Office, Aberdeen Police Department, Washington State Patrol, and Grays Harbor Sheriff's Office in addition to the Olympia Police Department, and other agencies.

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs
4

2.10 In addition, during that time period, The Tacoma Police Department, through Lt. Gary Smith and Lt. Mark Federson, in conjunction with Defendants Towery and Herbig began spying on a confidential attorney-client listserve belonging to the defense team for a criminal case stemming from a Port of Olympia demonstration in May of 2006.  This included covertly breaking the security of and joining a confidential Privileged Attorney-client listserve for the Defense team of a related criminal case dating from June of 2006.  Defendant Herbig acted to illegally and covertly join the same listserve.  Both of these Defendants, and Gary Smith, Mark Federson, and others of the Tacoma Police Department did so for purposes of gaining unfair advantage in a criminal matter then going to trial.

2.11 They then illegally obtained a confidential jury spreadsheet from the defense team and gave it to the prosecutors from the Thurston County Prosecutor's Office in the middle of the trial in that matter.  A mistrial ensued.  That case was later dismissed for prosecutorial misconduct.  This dragged out a prosecution for several months that would have been dismissed, prevented a likely acquittal and caused harm to individuals who will be named in an amended complaint to be filed later this year.

2.11 No later than May of 2007, the Coast Guard also began infiltrating and illegally spying on PMR and other groups, either in the person of Cliff Colvin directly or with CGIS officers planed and supervised by Defendant Colvin.

2.12 All of this spying created massive disruption to the ability of PMR to organize demonstrations and chilled the climate for First Amendment Expression for all involved.

2.14 In addition to the Army, Coast Guard, and Olympia Police Department, the following agencies are known to have spied on, infiltrated, or otherwise monitored the activities

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES                                                                                                      5
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

of PMR and/or related or associated activists: Thurston County Sheriff's Office, Grays Harbor Sheriff's Office, Pierce County Sheriff's Office, Tacoma Police Department, Lakewood Police Department, Ft. Lewis Police Department, 504th Military Police Division, Aberdeen Police Department, The Evergreen State College Police Department, the Lacey Police Department, the Tumwater Police Department, the Seattle Police Department, the King County Sheriff's Office, Immigration and Customs Enforcement, the Federal Protective Service, other Divisions of the Department of Homeland Security, Naval Investigative Services, Air Force Intelligence (which has created a special PMR SDS taskforce at McGwire Air Force Base in New Jersey), The Federal Bureau of Investigation, and the Seattle Joint Terrorism Taskforce, as well as the previously discussed civilian employees of the City of Olympia.  This list is likely incomplete.

2.15 Two Fusion Centers where military, Federal, State, County, and Local law enforcement agencies gather together to share intelligence have formed to focus on the activities of PMR, one at Ft. Lewis, and the Washington Joint Analytical Center (now know known as the Washington Fusion Center).

2.16 The Tacoma Police Department has formed a Homeland Security Division, which devotes a great deal of time to monitoring and reporting on the activities of PMR.

2.17 A great deal of the espionage focused on two collective households, one in Olympia and one in Tacoma.  Residents were harassed and arrested, Towery and other spies insinuated themselves into the households, attending meeting and social events, suggesting conferences and actions, etc.

2.18 In October of 2007, the Tacoma Police Department threatened to raid the Pitchpipe house on Tacoma because of a bookfair scheduled to take place there and threatened the house's

_Panagacos v. Towery_, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES                                                                                           6
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

landlord, resulting in a forced relocation of the house.

2.19 Various law enforcement agencies then collaborated to place a camera on a utility pole outside the new location of the household where it remained focused on the house for several weeks until abruptly removed.

2.20 Activists including Jeff Berryhill, Wally Cuddeford, Brendan Dunn, Tom McCarthy, Brian Smith and others were subject to repeated false arrests and other harassment over an extended period of time.

2.21 All of this activity was directed at a group of several dozen non-violent activists, who had signed a pledge of non-violence and whose worst activities were peaceful acts of non-violent civil disobedience that harmed and threatened no one.

2.22 Defendant RUDD sent out frequent "Force Protection Memos" and "Threat Assessments on PMR, the intelligence he had, and military tactics for disrupting and preventing their demonstrations as if they were an enemy military force that had to be defeated in battle instead of non-violent civilians exercising their First Amendment Rights.

2.23 The Coast Guard also issued reports and threat assessments.

2.24 The Army put out a report where they cited a PMR scenario as one that justified their violation of the Posse Comitatus Act and engagement in spying and civilian law enforcement.

2.25 The threat assessments and force protection memos, and other similar reports from other agencies were disseminated to the list of law enforcement, military and other agencies listed in 2.14 above, along with additional agencies and individuals, including private security firms.

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES                                                                                                    7
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

2.26 Those writings and others were used to justify preemptive arrests and physical attacks on peaceful demonstrations, as well as other harassment.

2.27 In November of 2007, the military once against used the Port of Olympia for military shipment

2.28     In response to the shipments, PMR held a series of peaceful protests in the City of Olympia over a two week period.

2.29 In advance of the shipments, RUDD began issuing daily memoranda based on the spying of TOWERY and others and disseminating those memoranda by e-mail to a lengthy list of military and law enforcement personnel and private security firms.

2.30 These memoranda discussed the tactics that PMR was likely to employ and details of internal discussions of strategy that were taking place in PMR meetings.

2.31 Military and law enforcement strategy meetings took place in Seattle prior to the date of the shipment.  Bjornstad attended those meetings as did Rudd, Towery, and Colvin, as well as officers of several law enforcement agencies.

2.32 At those meetings strategies and tactics for neutralizing PMR's ability to protest effectively were discussed and agreed to.

2.33 Michel, Bjornstad, and Nelson directed their officers in accordance with those meetings and with direction from Defendant HALL.

2.35 These attacks on participants in these demonstrations and their Constitutional Rights were intended to chill the First Amendment rights of those who were and those who might participate in those peaceful demonstrations and to dissuade then from so participating.

2.36 Every day the strategies and tactics of the police were changed to counteract any

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES                                                                                                8
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

success the participants in these demonstrations were having at getting their message across.

2.37 Some demonstrators and bystanders were seriously injured and emotionally traumatized.

2.38 Many others received minor injuries, physical and emotional.

2.39 Television footage of the police covering peaceful demonstrators in pepper spray aired all over the world.

2.40 Bjornstad made a decision, in consultation and by agreement with the other Defendants, agencies and the City to make preemptive arrests of demonstrators who had not broken any law to prevent potential civil disobedience.

2.41 That decision was made based on the spying, and the spying by the Army and Coast Guard is specifically referred to in Bjornstad's summary report of the demonstration.

2.42 All of the Plaintiffs in this action were harmed by the spying and surveillance by employees of the military and law enforcement and the resulting policies implemented in November of 2007.

2.45 The preemptive actions by the police on the night of November 13, 2007 resulted in the arrest of 41 people for "attempted disorderly conduct, because, law enforcement insisted, they knew, based on the spying, that these individuals intended to block convoys.

2.46 At the time of the arrest of the PLAINTIFFS LISTED IN 2.44 ABOVE on November 13, 2007, demonstrators were chanting and singing, holding signs, and generally carrying out a lawful demonstration in a blocked off stretch of road, closed to traffic by the police. No traffic was blocked by the demonstration.

2.47 There were no convoys travelling at that time.  The only vehicles in the area were

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES                                                                                                    9
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

blocked from sight behind a fence in a non-visible potion of the locked area of the Port of Olympia.

2.48. After the arrests on November 13, 2007, the convoy was brought out through another gate some distance away and never even traveled through the location where the demonstrators had been prior to their arrest.

2.51 The organized policy of false arrests, brutality, excessive and unreasonable force, and humiliation and mal treatment in the jail was part of strategy meetings and discussions held in conjunction with the spying and involved multiple civilian and military agencies and personnel the identities of all of whom are not yet known to Plaintiffs.

2.52 Towery, Rudd, Colvin, and others continued in their illegal spying role at least until Towery was caught in July of 2009.

2.53 In August of 2008, PMR was holding meetings at the One Heart Café in Tacoma to discuss strategy for upcoming demonstrations around a military shipment through the Port of Tacoma.

2.54 Towery attended those demonstrations and snuck out to give at least hourly bulletins by text message and cell phone.

2.55 Demonstrators were followed from those meetings, followed to demonstration sites, and often preemptively arrested to prevent them from breaking the law.

2.56 Towery and the other illegal spies acted in a similar manner on May of 2009.  At that time demonstrators in Lakewood were arrested by soldiers of the 504th Military Police Battalion on civilian territory in Lakewood.  The Military Police and Ft Lewis Police received briefings from Rudd as to what would take place on the part of the demonstrators and made

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES                                                                                              10
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

arrests accordingly.

2.57  In July of 2009, having received Force Protection Memos and Threat assessments and other e-mails and correspondence in a Public Records Act Request served on the City of Olympia for other materials, Brendan Dunn and Drew Hendricks discovered that the Army and Coast Guard, and other agencies had been spying on them.

2.58 Through research and investigation, Dunn and Hendricks were able to determine that John Towery had been spying on them under a false name (John Jacob) for at least two-and-a-half-years.

2.59 When confronted, Towery admitted to being a spy, but claimed to be doing it for their own good.

2.60 Dunn had considered Towery a close friend as did others involved with PMR.

2.61 The Army has admitted that Towery works for them, and promised an investigation.

2.62 No investigation has ever taken place.

2.63 The US Attorney's Office has taken great pains to try and conceal the evidence of the spying.

2.64 To Plaintiffs' knowledge, the spying, without Towery, continues to this day and continues to disrupt and chill the First Amendment protected activities of PMR.

## B. ADDITIONAL FACTS

Much such conduct, on the part of local and state agencies has been the subject of resolved and ongoing litigation before this court in Chinn v. Blankenship- 3:09-cv-05119-RJB, McCarthy v. Barrett- 3:09-cv-05120-RBL, and Love v. City of Olympia-3:09-cv-

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES                                                                                                      11
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

05531-RBL.

According to a Summary report from Defendant Olympia Police Commander Tor Bjornstad, he and his command relied on threat assessment and reports from informants from the Army(Towery, etc) and the Coast Guard (Colvin) when determining what law enforcement action to take against the demonstrations.  Bjornstad cites information from the Army and Coast Guard informants in making the determination to make what amounted to pre-emptive arrests on the night of November 13, 2007.

Plaintiffs Panagacos, Cox, Snyder, Porter, Robbins, and Garfield were all arrested that night while peacefully demonstrating in a street blocked off from automobile traffic by the police.  They were all charged with "attempted disorderly conduct" and obstruction.  Bjornstad in his reports claims that they knew that these Plaintiffs and several dozen more arrested that night intended to commit civil disobedience because of the intelligence they had received from the infiltrators, and what had occurred on prior nights.  The latter is legal invalid, based on among other cases, Collins v. Jordan 102 F.3d 406 (9th Cir. 1996) and Carroll v. President and Com'rs of Princess Anne, 393 U.S. 175. The former is part of the subject of the case against Defendants Colvin, among others.

Plaintiffs Rhodes, and Evans, Grande, and Rios, were all arrested on other nights in November of 2007, based at least in part on intelligence from the threat assessments.

Plaintiffs Dunn, Crespo, and Berryhill all suffered extensive harassment and harm as detailed in the 2nd and 3rd Amended Complaints in this matter.  All were targeted based on their involvement in PMR, their household's involvement in PMR, and personal direction from Towery, Rudd, and Plaintiffs reasonably believe Colvin.  All three provided information for and

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES                                                                                    12
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

produced threat assessments of Plaintiffs and their households.

By all accounts the infiltration and surveillance continued until at least July of 2009 when Towery's identity became known, as did Colvin's through documents obtained by Plaintiffs in state Public Records Act requests.

The end result of this infiltration and repression was that PMR suffered internal dissention, accusation, mistrust, suspicion, and unwillingness to work with each other out of fear that has prevented PMR from engaging in any demonstrations or other First Amendment protected activity since May of 2009.

 In addition, Plaintiffs add the following: they have now learned through Public Records Act requests filed by the Bill of Rights Defense Committee, a third party, and obtained from the City of Tacoma, that Defendant Towery was under contract to the Pierce County, Washington Sheriff's Office to spy on Plaintiffs and others, including at events not open to the public, that Towery, with the facilitation of Defendants Rudd did so, and that harm so resulted including the harm detailed in the fact portion of Plaintiffs' Third Amended complaint.

Plaintiffs have further learned from ongoing investigation that Towery in early 2007 personally tampered with the settings for an attorney client listserve for a criminal case, as detailed in Plaintiffs' Third Amended Complaint and illegally obtained attorney-client privileged information that was then unlawfully passed on to the Thurston County Prosecutor's Office and used by them to obtain a mistrial in that matter causing additional harm to Plaintiffs Dunn, Berryhill, Porter, and others.  This is the Sixth Amendment violation discussed in Plaintiffs' Third Amended and previous versions of their complaint on this matter.

## II.  LEGAL ARGUMENT

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES                                                                                           13
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

Plaintiffs will mirror Defendants' organizational system in their response to it.

### A. TO THE EXTENT THAT TOWERY WAS ACTING IN THE COURSE AND SCOPE OF HIS FEDERAL EMPLOYMENT, DEFENDANTS ARE CORRECT THAT THE UNITED STATES IS THE PROPER PARTY

To the extent that Defendant Towery was acting in the course and scope of his Federal Employment *solely*, Defendants are correct that under the Westfall Act the Federal Government is liable for his actions and is a proper Defendant. In addition, however, Plaintiffs have provided proof attached to their response to the United States' second motion to dismiss, that Defendant Towery was also acting on behalf and under the direction of the Pierce County Sheriff's Office, and apparently, extensively so. In doing so, he was a *State Actor*, and as such cannot be indemnified by the United States, and must be maintained as a party. Therefore, at least in part, the substitution and this motion to dismiss must be denied.

### B. PLAINTIFFS HAVE PROVIDED SUFFICIENT SPECIFICITY AS PER IQBAL AND TWOMBLY

In their 12(b)(6) Motion, Defendants both overstate the pleading standard that Plaintiffs must meet under Iqbal and Twombly, and  understate the specificity with which Plaintiffs' have pled their allegations against Defendants Towery and Rudd and others.

The pleading standard of Twombly and Iqbal has two components: first, that a court need not accept "legal conclusions" as true, and second, that a complaint must state "a plausible claim for relief." *Iqbal*, 129 S. Ct. at 1949-50 (citing *Twombly*, 550 U.S. at 555-56). Everything therefore turns on the meanings of "conclusory" and "plausible,"

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES                                                                                           14
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

and we begin with these points. In addition, *Iqbal* holds that because a claim of unconstitutional discrimination requires discriminatory intent, such a claim against a supervisor depends on the supervisor's own intent, not that of subordinates. 129 S. Ct. at 1948-49. Consequently, a complaint must make such intent "plausible."

*Id.* at 1951-52. Defendants, however, seek to extract a broader reading from *Iqbal*: namely, that even where the standard of intent for a constitutional violation is deliberate indifference, *Iqbal* frees government supervisors from any liability for such indifference to a subordinate's unconstitutional conduct, or for failure to rectify a constitutional violation of which they are aware. As we demonstrate below, this conclusion has no support in *Iqbal*.

## 1. "Conclusory" Allegations Under *Twombly* and *Iqbal*

In explaining its use of the term "conclusory," the Court in both *Twombly* and *Iqbal* reiterated the principle that courts "are not bound to accept as true *a legal conclusion couched as a factual allegation*." *Twombly*, 550 U.S. at 555; *Iqbal*, 129 S. Ct. at 1949-50 (emphasis added; quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). "[A] *formulaic recitation* of the elements of a cause of action will not do. . . ." 550 U.S. at 555 (emphasis added).

The cases illustrate what this means in practice. In *Twombly*, the Court said that "a conclusory allegation of agreement *at some unidentified point*" required the support of some subordinate facts if it was to be taken as true at the motion to dismiss stage. *Id.* At 557 (emphasis added). The Court did not say that every allegation of an agreement is conclusory, but the absence of detail made Twombly's claim conclusory.

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES                                                                                    15
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

Likewise in *Papasan*, the allegation that Plaintiffs "have been deprived of a minimally adequate education" was conclusory: The petitioners do not allege that schoolchildren in the Chickasaw Counties are not taught to read or write; they do not allege that they receive no instruction on even the educational basics; they allege no actual facts in support of their assertion that they have been deprived of a minimally adequate education. 478 U.S. at 286. Again, the absence of any supporting fact made the allegation conclusory. Similarly, in *Iqbal* the Court held that the claim "that petitioners adopted a policy 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group" was "a formulaic recitation of the elements of a constitutional discrimination claim," and thus "conclusory and not entitled to be assumed true." 129 S. Ct. at 1951 (internal quotation marks and citation deleted). The problem with such a complaint is not that it alleges the elements of a claim; a complaint must do that. Rather, the critical term "formulaic" suggests that the Plaintiff could have drawn these allegations from a statute, treatise, or other general description of such claims, without knowing any facts to suggest that those elements actually existed in his particular case.

The requirement of some supporting facts is based on the requirement of Fed. R. Civ. P. 8—that a complaint "give the Defendant fair notice of what the claim is, and the grounds upon which it rests." <u>Twombly</u>, 550 U.S. at 555 (internal quotation marks and citation omitted); *see also* 556 n.3 ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.") (citing Rule 8). These two concerns underlie the treatment given "conclusory" allegations, and the way in which "conclusory" must be understood. Many—perhaps most—allegations

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss

LAWRENCE A. HILDES
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

16

are *conclusions* strictly speaking; for example, the allegation in Official Form 15,

Complaint for the Conversion of Property, that "On *date*, at *place*, the Defendant

converted to the Defendant's own use property owned by the Plaintiff," is a conclusion

based on events that must have occurred at the time and place referred to; nevertheless, this

officially sanctioned allegation is plainly not "conclusory" for pleading purposes (*see* Fed. R.

Civ. P. 84). That is because the allegation (a) indicates a factual basis, and (b) gives notice to the

Defendant. The Court classed key allegations in *Twombly* and Iqbal as "conclusory" because it

found that they failed to meet these criteria. Nevertheless, "[s]pecific facts are not necessary; the

statement need only "'give

the Defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"

Erickson v. Pardus 551 U.S. 89, 93 (2007) (ellipsis in the original; quoting *Twombly*,

550 U.S. at 555, quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (holding that it was

sufficient for the Plaintiff to allege that a prison doctor's termination of his treatment for

hepatitis endangered his life, without further specification of the basis for that allegation).

## B. "Plausible" Claims Under *Twombly* and *Iqbal*

There are two key points about the meaning of "plausible" under *Twombly* and

*Iqbal*: one about what "plausible" does not mean, and one about what it does. First, "plausible"

does not mean "likely"; a claim need not be *likely* in order to withstand a motion to dismiss:

Asking for plausible grounds to infer an agreement does not impose a probability requirement at

the pleading stage; it simply calls for enough fact to raise a reasonable

expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-

pleaded complaint may proceed even if it strikes a savvy judge that actual proof of

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES                                                                              17
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

those facts is *improbable*, and that a recovery is *very remote* and *unlikely*.

Twombly, 550 U.S. at 556 (internal quotation marks omitted; emphasis added); *see also*

Iqbal, 129 S. Ct. at 1949.  Second, the key to plausibility is inference: has the Plaintiff alleged

facts from which liability might be *inferred*? Iqbal sums this up: "A claim has facial plausibility

when the Plaintiff pleads factual content that allows the court *to draw the reasonable*

*inference* that the Defendant is liable for the misconduct alleged. Iqba*l*, 129 S. Ct. at 1949

(emphasis added) (citing Twombly, 550 U.S. at 556)  As with their analysis of what is

"conclusory," Twombly and Iqbal base their treatment of "plausibility" on Rule 8(a). "The need

at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement

reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft

to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557; *see also* Iqbal, 129

S. Ct. at 1950-51. Twombly and Iqbal illustrate how this works. In Twombly, the Plaintiffs

pointed to the parallel conduct of the Defendant telephone companies, and said in substance:

Defendants would surely not be acting in this non-competitive way except by agreement;

without an agreement, self-interest would drive them to compete with one another. From

Defendants' conduct, said Plaintiffs, we can infer an agreement. But Plaintiffs' argument

failed, because their inference was invalid; Defendants were in fact acting as one would

₅ Similarly: "But where the well-pleaded facts do not permit the court *to infer* more than

the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—

'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950 (emphasis added) (citing

Fed. R. Civ. P. 8(a)(2)). "As to the ILECs' supposed agreement against competing with each

other, the District Court found that the complaint does not 'alleg[e] facts ... suggesting that

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES                                                                                                          18
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

refraining from competing in other territories as CLECs was contrary to [the ILECs'] apparent

economic interests, and consequently [does] not *rais[e] an inference* that [the ILECs'] actions

were the result of a conspiracy.'" *Twombly*, 550 U.S. at 552 (emphasis added) (citing

*Twombly v. Bell Atlantic,* 313 F. Supp. 2d 174, 188 (S.D.N.Y. 2003)).

"The economic incentive to resist was powerful, but resisting competition is routine market

conduct, and even if the ILECs flouted the 1996 Act in all the ways the Plaintiffs allege, there is

no reason *to infer* that the companies had agreed among themselves to do what was only natural

anyway. . . ." *Id.* at 566 (emphasis added; record citation omitted). expect them to act in their

own self-interest, without any agreement. Twombly, 550 U.S. at 554. The Court said:

In identifying facts that are suggestive enough to render a § 1 conspiracy plausible, we have the

benefit of the prior rulings and considered views of leading commentators,

already quoted, *that lawful parallel conduct fails to bespeak unlawful agreement*. Twombly, 550

U.S. at 556 (emphasis added). In short, "parallel conduct does not suggest conspiracy." *Id.* at

557. Without any basis for inferring conspiracy, the Twombly Plaintiffs' claim of conspiracy

was not plausible.

The same kind of analysis reached the same result in Iqbal. As in Twombly, the issue

was: why did the Defendants do what they were alleged to have done? Pointing to

the incarceration of "thousands of Arab Muslim men . . . in highly restrictive conditions

of confinement" (Iqbal complaint, quoted at 129 S. Ct. at 1951), Iqbal alleged that this

would not have happened if Defendants were not motivated by prejudice. As in Twombly,

the Court rejected the inference, concluding that Defendants could have been expected to

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES                                                                                      19
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

act in the same way without any prejudice: On the facts respondent alleges the arrests Mueller

oversaw were likely lawful and justified by his nondiscriminatory intent to detain aliens who

were illegally present in the United States and who had potential connections to those

who committed terrorist acts. 129 S. Ct. at 1951.

Because "potential connections to those who committed terrorist acts" explained

Defendants' conduct, there was no basis for inferring that Defendants were motivated by

prejudice. While the Court said that these potential connections provided a "more likely

explanation[]" of what Defendants did (*id.*), the problem was not simply that this explanation

was more likely than the one proffered by Plaintiff, for—as we have noted—the Court was

careful to say also that "[t]he plausibility standard is not akin to a 'probability requirement'. . . ."

*Id.* at 1949 (quoting <u>Twombly</u>, 550 U.S. at 556). The critical question is whether or not one can

infer illegality from a Plaintiff's factual allegations, and the Court held that, in <u>Iqbal</u> as in

<u>Twombly</u>, this inference could not be drawn. But it remains the case, as the Second Circuit has

held, that a court judging the legal sufficiency of a complaint must "draw[] all reasonable

inferences in the Plaintiff's favor." <u>Harris v. Mills</u> 572 F.3d 66, 71 (2d Cir. 2009). A complaint

may not be dismissed on the pleadings merely because there is a "more likely" explanation than

the Plaintiff's for the facts alleged. "Plausibility" depends on inference, and if the Plaintiff's

factual allegations provide a basis for inferring liability, that is sufficient. They need not exclude

innocent explanations, or even make them unlikely. *See* <u>Tellabs, Inc. v. Makor Issues & Rights,</u>

<u>Ltd.</u>, 551 U.S. 308, 314 (2007) (holding that under the heightened pleading standard required by

the Private Securities Litigation Reform Act, an inference of scienter must be "*more than merely*

*plausible* or reasonable—it must be cogent and *at least as compelling as any opposing*

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss

LAWRENCE A. HILDES                                                                                                            20
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

*inference* of nonfraudulent intent") (emphasis added). The term "plausible" thus does not imply something *more compelling* than the alternatives. Outside the PSLRA realm, "even when the story in a pleading's factual allegations is marginally *less* plausible, but still plausible, it should be sufficient for purposes of Rules 8 and 12." Escuadra v. GeoVera Specialty Ins. Co. No. 09-cv-974, 2010 U.S. Dist. LEXIS 94301, at *27 (E.D. Tex. Sep. 9, 2010); *see also Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir. 2010) ("the court will ask itself *could* these things have happened, not *did* they happen . . . it is not necessary to stack up inferences side by side and allow the case to go forward only if the Plaintiff's inferences seem more compelling than the opposing inferences"); *Chao v. Ballista,* 630 F. Supp. 2d 170, 177 (D. Mass. 2009) (Defendant's alternative explanation must be "so overwhelming, that the claims no longer appear plausible"). But it is critical that, although a "more likely" explanation is not *sufficient* to show that a complaint is implausible, it is *necessary* to such a showing. Plainly, if the innocent explanations of a Defendant's conduct are *less* likely than the one alleged by the Plaintiff, then the Plaintiff has offered a plausible basis for inferring liability.

Here, Plaintiffs have pled in detail how Defendant Towery, at the direction and with the direct knowing supervision of Defendant Rudd used false information to infiltrate a group doing only nonviolent protest and as stated in paragraph 2.7 "In May of 2007, Towery intensified his infiltration of PMR attending numerous private meetings, engaging in lengthy discussions with activists, persuading activists to attend events and engage in tactics that they had not previously intended, and in conjunction with other agencies and individuals targeting activists for harassment and arrest in Olympia, Aberdeen, and in between the two places." This paragraph

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES                                                                                      21
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

and others illustrate with specificity activity that Towery engaged in and how it specifically resulted in harm to Plaintiffs. In Paragraphs 2.30 and 2.31 Plaintiffs specify that Towery attended specific meetings with state law enforcement personnel, and that decisions were made at these meetings to target the Plaintiffs.  These facts are based on specific documents and are more than mere conclusory recitations of law, giving specific facts as to who when, what, and the harm.

Under the caselaw, this is sufficient to overcome a 12(b)(6) motion.  This is sufficient, given the totality of the facts pled to meet the standard, which is mere plausibility. Given that Towery got caught spying, admitted to spying, and a documents trail exists., Plaintiffs can actually, even at this stage offer a high level of proof, even though they needs not prove their case at this stage, prediscovery. Therefore, this motion should be denied.


## C. PLAINTIFFS HAVE SUFFICIENTLY PLED THE FACTS TO DEMONSTRATE THAT TOWERY VIOATED A CLEARLY ESTABLISHED RIGHT PURSUANT TO BIVENS AND ITS PROGENY

Even though qualified immunity is a summary judgment standard, premature at this staff pursuant to FRCP 56(f), the facts pled demonstrate profound violations of Constitutional Law, including violations of their First Amendment Rights by spying on them and targeting them based on their political views and expression. He violated their Fourth Amendment Rights by spying on closed meetings and personal events and gatherings for the purpose of covertly gathering information on 1st Amendment protected activity directly leading to arrests and illegal stops.  He violated their 5th Amendment Rights by working to entrap Plaintiffs into activity they otherwise would not engage in.  He violated their 6th Amendment Rights, and their 5th Amendment Due Process Rights by spying on their confidential Attorney-Client communications

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES                                                                                          22
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

and then sharing the results of that illegal activity with the Thurston County Prosecutor's Office, which then misrepresented the source and location of an internal sensitive and privileged document to then obtain a mistrial to Plaintiff's detriment.  Defendants attempt to get around that issue by making an unsubstantiated ad hominum claim that Plaintiffs' attorney-client listserve for a specific case was open to others and used for other business. Absent proof and the opportunity for Plaintiffs to provide actual proof and verified facts, this ad hominum attack should be disregarded, and it is patently untrue.

Defendant Towery also violated Plaintiffs 14th Amendment Equal Protection Rights by targeting them based on their 1st Amendment protected speech and political views, which are protected classes under the 14th Amendment.   In marked contrast to Defendants' statements in the motion herein responded to, Plaintiffs note that they did, in fact and continue to allege that Towery conspired with local law enforcement to make arrests, detentions, and traffic stops based on his illegally obtained, and often fictional information to them.  These allegations do not in the words of Moss v. US Secret Service 572 F. 3d 962, 972(9th Circuit 2009) as cited by Defendants, require the court to make "unreasonable inferences" or "unwarranted deductions".  They rather lay out the violation to the degree required to withstand a 12(b)(6) Motion under Iqbal and Twombly.  Defendants insist that Plaintiffs focus on the November 13, 2007 demonstration and mass arrest, bit the complaint makes clear that that is one example out of many and details how Plaintiffs Dunn, Crespo, and Berryhill (none of whom were arrest on November 13, 2007 were targeted.

Plaintiffs have also pled, in accordance with Iqbal and Twombly sufficient specificity and nonconclusory statements about how Defendants targeted Plaintiffs because of their vocal

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES                                                                                                          23
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

opposition to the wars that Towery's army, and Towery's base were engaged in, and based on

Towery and Rudd's belief and that of the state actor law enforcement agencies and named

Defendants based on the widely expressed perception that they held a specific political ideology

that Defendants in and of itself acted as if just by its existence were a threat (Anarchism).

Towery, at this point has not denied so acting and has offered no evidence or explanation to the

contrary. This is well beyond a recitation of the law.  In addition, in marked contrast to

Defendants' claim, Plaintiffs have not alleged a "Speculative claim of  chill" bit have stated

directly that Defendants activities severally impaired the ability of Port Militarization to organize

and scared these Plaintiffs and others away from demonstrations-see paragraph 2.12.

Having alleged specific Constitutional violations intentionally caused by Towery,

Plaintiffs have pled sufficiently to maintain the action.

Defendants attempt to finesse this issue by merging it with a  qualified immunity

discussion citing and under the standard of proof for Summary Judgment motions, which are

appropriate only *after*  Plaintiffs have had the opportunity to propound discovery requests to

establish exactly what went on, how, and the intent thereof.  Failing to give Plaintiffs the

opportunity to engage in substantive discovery and develop and lay out material facts pursuant to

FRCP 56(f) would severely prejudice Plaintiffs and violate their right to due process in this

action.

In addition, Defendants have not properly pled a motion for summary judgment, and their

qualified immunity and summary judgment motions are premature.

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES                                                                                           24
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

## D. TOWERY IS A STATE ACTOR

As discussed previously, Towery was at all times alleged, on addition to working for the army, a non law enforcement agency to spy on Plaintiffs, he was also under contract to the Pierce County Sheriff's Office to spy on Plaintiffs for them,  Pierce County being a local county government organized under the laws of the State of Washington, Towery is then a state Actor and a proper Defendant under 42 USC 1983, et seq  In addition, as per Gibson v. US 731 F, 2d 1334 (9th Circuit, 1986) as cited by Defendants on page 14-15, Towery (and Rudd) were and are also state actors because, as alleged throughout the complaint (see e.g. paragraphs 2.14, 2.25. 2.26. 2.31, etc) Towery and Rudd were acting in conjunction with a host of State and local agencies including the Olympia Police Department, Tacoma, Police Department, Thurston County Sheriff's Office, Grays Harbor County Sheriff's office, Washington State Patrol, etc. Defendants correctly quote Billings v. United States 57 F. 3d 797(9th Circuit, 1995) as holding that "Federal employees can act under color of state law if they conspire or act in concert with state officials to deprive a person of his or her rights." See page 15 of Defendants' Motion.  That is precisely what Plaintiffs have alleged in their Third Amended Complaint and as discussed throughout these allegations are sufficient specific and are more than conclusory.  For all of the above reasons, Defendant Towery should be considered a state actor and subject to Plaintiffs' allegations under 42 USC 1983.

## E. POSSE COMITATUS

Defendants appear to be correct that no civil private cause of action exists under Posse Comitatus, however pursuant to Bivens,  and in marked contrast to Defendants claim on page 10 of their brief that Plaintiffs allege no Federal law violations by Towery and Rudd, this is the

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES                                                                                            25
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

Federal Law that, as Defendants concede on Page 16 of their brief Plaintiffs state that Defendants Towery and Rudd violated.  Plaintiffs also note that they are deeply troubled that Defendants describe such a significant piece of legislation as arcane,.  This is a law designed to prevent the military, which has no training in protecting (except by foreign military action) and respecting the Constitutional rights of U.S. civilians nor in acting as a law enforcement agency from engaging in civilian law enforcement, a role for which it is ill suited and ill trained.  The Act is designed to protect peaceable civilian government and discourse. This attitude explains how the events described in the complaint in this matter and other violations have been allowed to occur and how we got into the mess we're in now in this country vis a vis illegal wiretapping and spying by various Federal and local agencies throughout the county.

## III. PLAINTIFFS THIRD AMENDED COMPLAINT IS SUFFICIENTLY DEFINITE

As explained and argued throughout this response, Plaintiffs have, in fact, pled their Third Amended complaint with sufficient specificity, detail,  and nonconclusory statements and language to be sufficiently definite and not require amendment or clarification.

If the court feels that an amended complaint is warranted, Plaintiffs request specific direction as to what is deficient, and 45 days to so amend in accordance with Plaintiffs' counsel's notice of unavailability.

## IV. CONCLUSION

For all of the above reasons, Defendant Towery's 12(b)(6) Motion and motion for a more definite statement should be denied and the case allowed to proceed to the discovery stage.

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES                                                                                           26
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs

Respectfully Submitted:  February 4, 2011

_____/S/_____

        LAWRENCE A. HILDES, WSBA #35035
        Attorney for Plaintiffs
        P. O. Box 5405
        Bellingham, WA 98227
        Telephone: (360) 715-9788
        Fax (360) 714-1791
        e-mail: lhildes@earthlink.net

Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs                                                                      27

## PROOF OF SERVICE

Lawrence A. Hildes certifies as follows:

I am over the age of 18 years, and not a party to this action. I am a citizen of the United States.

My business address is P.O. Box 5405, Bellingham, WA 98227

On February 4, 2011, I served the following documents(s) described as follows

PLAINTIFFS' RESPONSE TO DEFENDANT TOWERY'S MOTION TO DISMISS
on the following persons(s) in this action at the following addresses:

Michael D McKay mdm@mckay-chadwell.com, hgr@mckay-chadwell.com, lmm@mckay-chadwell.com,
Thomas Matthew Brennan tmb@mckay-chadwell.com, hgr@mckay-chadwell.com, lmm@mckay-
chadwell.com, lisa@lldkb.com, Thomas Matthew Brennan tmb@mckay-chadwell.com, hgr@mckay-
chadwell.com, lmm@mckay-chadwell.com Kathryn C Pineda kcp@mckay-chadwell.com, hgr@mckay-
chadwell.com, lmm@mckay-chadwell.com

Donald L Law dlaw@lldkb.com,

Theodore J Angelis theo.angelis@klgates.com, rhonda.hinman@klgates.com, Pallavi Mehta
Wahi pallavi.wahi@klgates.com, bill.hill@klgates.com

Mark N. Bartlett MarkBartlett@dwt.com, barbaramcadams@dwt.com

Michael Diaz michael.diaz@usdoj.gov, ECF-Civ.USAWAW@usdoj.gov, amy.hanson@usdoj.gov,
shannon.connery@usdoj.gov, tina.litkie@usdoj.gov

[ ] (BY FIRST CLASS MAIL) by placing a true copy of the above documents in a sealed
envelope with postage fully prepaid in the mail at Bellingham, WA, addressed to the person(s)
above at the above address

[X] By electronically serving, by filing an electronic copy with the court in such a way that
notice will be sent to counsel for Defendant

[X] (FEDERAL) I declare under penalty of perjury that I am a member of the BAR of this court,
and that the above information is true and correct.

Executed on February 4, 2011, at Bellingham, Washington.


_____/S/_____
Lawrence A. Hildes


Panagacos v. Towery, et al-Plaintiffs Response To Defendant Towery's 12(B)(6)Motion to Dismiss
LAWRENCE A. HILDES                                                                                          28
P.O. BOX 5405
Bellingham, WA 98227
(360) 715-9788
Fax: (360) 714-1791
Of Attorneys for Plaintiffs