HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JULIANNE PANAGACOS, et al, | CASE NO. C10-5018RBL |
| Plaintiff, | ORDER |
| v. | |
| JOHN J. TOWERY, et al, | |
| Defendant. | |

THIS MATTER comes before this Court upon Defendant Colvin's Motion to Dismiss pursuant to Rule 12(b)(6), or in the alternative, Motion for Summary Judgment pursuant to Rule 56 [Dkt. #49]. The Court has considered the entirety of the records and file herein. Oral argument is not necessary to decide the issues in this motion. The Court's ruling is set forth below.

**I.    BACKGROUND**

Plaintiffs are members of a group known as Port Militarization Resistance (PMR). The group protests the use of public ports in Western Washington for shipments of military equipment used in the wars in Iraq and Afghanistan. One of many defendants is Clinton D.

ORDER- 1

Colvin, Special Agent (S/A), United States Coast Guard Investigative Service (CGIS). S/A Colvin is now retired from his civilian position with CGIS.

Plaintiffs' Third Amended Complaint[1] is based on events beginning in March, 2007, and culminating in plaintiffs' arrests by Olympia police officers during several days of protests outside the Port of Olympia in November, 2007. The plaintiffs were protesting the offloading of the USNS *Brittin,* which carried military equipment that had been used by the Fort Lewis Stryker brigade in Iraq.

Plaintiffs' poorly drafted Third Amended Complaint makes the following specific allegations against S/A Colvin:

- Defendant COLVIN, and others as yet unknown, either directly infiltrated and spied on Port Militarization Resistance (an avowedly peaceful and nonviolent anti War Group based in Olympia, WA), and other groups in that area, by lying about his affiliations and purposes, and falsely identifying himself for the purpose of spying on their meeting and activities, disrupting those activities, and identifying individuals and groups of individuals to be arrested and/or targeted despite their lack of actual illegal activity, or directed other, younger members or employees of the CGIS to do so and then supervised those individuals. COLVIN is and was also in the dissemination lists of Rudd's Force Protection memoranda, Threat Assessments and other reports and responsible for providing material therefor. These groups and individuals were targeted specifically because the Army, local law enforcement including the Olympia and Tacoma Police Departments, and

---

[1] Plaintiffs' original complaint was filed on January 13, 2010. It has been amended three times as a result of the Court's Orders on other defendants' motions for a more definite statement. The Third Amended Complaint [Dkt. #54] is the operative pleading in the case.

ORDER- 2

other agencies, did not like the content of the speech involved. Rudd took Colvin's information, and that of others engaged in illegal surveillance, spying, and searches and seizures and produced memoranda, Force Protection Reports, and Threat Assessments as if these peaceful anti-war protestors were a hostile military force, which were disseminated to various military, Federal, State, and Local Officials and Law Enforcement Officers in order to disrupt their 1st Amendment protected Free Expression and Free Associational activities. These groups and individuals were targeted specifically because the Army, Coast Guard, local law enforcement including the Olympia and Tacoma Police Departments, and other agencies, did not like the content of the speech involved. TAC ¶ 1.17 (spelling, capitalization, and punctuation in original).

- No later than May of 2007, the Coast Guard also began infiltrating and illegally spying on PMR and other groups, either in the person of Cliff (sic) Colvin directly or with CGIS officers planed (sic) and supervised by Defendant Colvin. TAC ¶ 2.11.

- Military and law enforcement strategy meetings took place in Seattle prior to the date of the shipment. Bjornstad attended those meetings as did Rudd, Towery, and Colvin, as well as officers of several law enforcement agencies. . . . At those meetings strategies and tactics for neutralizing PMR's ability to protest effectively were discussed and agreed to. TAC ¶¶ 2.31-2.32

- Towery, Rudd, and Colvin, and others continued in their illegal spying role at least until Towery was caught in July of 2009. TAC ¶ 2.52.

ORDER- 3

1  The Third Amended Complaint also alleges that "The Coast Guard also issued reports and threat
2  assessments." TAC ¶ 2.23.

3  Plaintiffs allege nine[2] causes of action and names defendant S/A Colvin in eight of them.
4  Count One alleges that all defendants violated plaintiffs' civil rights under 42 U.S.C. § 1983.
5  Count Two does not name S/A Colvin. Count Three alleges that all defendants violated the
6  plaintiffs' civil rights under the Washington State Constitution. Count Four alleges that all
7  defendants falsely arrested the plaintiffs. Count Five alleges that all defendants subjected the
8  plaintiffs to false imprisonment. Count Six alleges that all defendants committed the tort of
9  assault and battery as to all plaintiffs. Count Seven alleges that all defendants committed the tort
10  of intentional infliction of emotional distress upon all plaintiffs. Count Eight alleges that all
11  defendants committed the tort of malicious prosecution as to those plaintiffs who were charged
12  criminally. Count Nine alleges that defendants Colvin, Towery, and Rudd violated the plaintiffs'
13  constitutional rights and asserts a *Bivens* claim on behalf of plaintiffs. Count Nine also alleges
14  that Colvin, Towery, and Rudd violated the Posse Comitatus Act.

15  **II.   DISCUSSION**

16  Defendant S/A Colvin moves to dismiss all claims against him pursuant to Fed. R. Civ. P.
17  12 (b)(6), or, alternatively, moves for summary judgment pursuant to Fed R. Civ. P. 56. He
18  argues that Count One must be dismissed because it alleges a claim under 42 U.S.C. § 1983, and,
19  as a federal officer, a § 1983 claim cannot be maintained against him. Colvin argues that to the
20  extent Counts Three through Eight present state law claims against him, he is absolutely immune
21  under the Federal Employees Liability Reform and Tort Compensation Act ("*Westfall* Act"), 28

22  ―――――――――――

23  [2] The Third Amended Complaint has two causes of action numbered Eight. For clarity, the defendant refers to the second cause of action numbered Eight, the Bivens claim, as Count
24  Nine. The Court will also refer to the Bivens claim as Count Nine.

U.S.C. §§ 2674, 2679.  Finally, he argues that Count Nine, the *Bivens* claim, should be dismissed under the doctrine of qualified immunity.  Plaintiffs oppose the Rule 12(b)(6) motion and request that the summary motion be continued and discovery be allowed under Rule 56(f).

**A.**     **The Law.**

      **1.**     **Rule 12(b)(6) standard.**

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990).  Review is limited to the content of the complaint [and properly incorporated documents], and all allegations of material fact must be taken as true, and construed in the light most favorable to the non-moving party.  *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996).

Under *Bell Atlantic Corp. v. Twombly*, a litigant cannot simply recite the elements of a cause of action to avoid dismissal under this Rule.  He must instead "provide the grounds of his entitlement to relief, which requires more than labels and conclusions."  550 U.S. 544, 555 (2007).  The litigant must plead a claim that moves "across the line from conceivable to plausible."  *Id*. at 570.

In *Ashcroft v. Iqbal*, the Supreme Court set out a two-pronged approach for reviewing the sufficiency of a complaint in the face of a motion to dismiss for failure to state a claim.  129 S. Ct. 1937, 1949-50; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009).  First, the Court may identify those statements in a complaint that are actually legal conclusions, even if presented as factual allegations.  *Iqbal*, 129 S. Ct. at 1949-50.  Such conclusory statements are not entitled to a presumption of truth.  *Id*.  Second, the Court presumes the truth of any remaining "well-pleaded factual allegations," and determines whether these allegations and reasonable

inferences from them plausibly support a claim for relief. *Id*. at 1950; *see also Moss*, 572 F.3d at 969-70.

### 2. Summary Judgment Standard.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### 3. Qualified Immunity.

Pursuant to the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In analyzing a qualified immunity defense, the Court must determine first, whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party

asserting the injury; and then, whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v.* Briggs, 475 U.S. 335, 341 (1986). The privilege of qualified immunity is an immunity from suit rather than a mere defense to liability, and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Id*.

The Supreme Court has recently held that the *Saucier* protocol should not be mandatory in all cases . . . [but] it is often beneficial." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). In this case it is beneficial to first determine whether a constitutional right was violated before moving to the second question of whether the right was clearly established.

### 4. *Bivens* Claims

In *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), the Supreme Court created a private right of action for damages against federal officers alleged to have violated an individual's constitutional rights. Such actions are identical to actions under 42 U.S.C. § 1983, except for the replacement with a federal actor under *Bivens* for a state actor under §1983. *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir 1991). A plaintiff must show that the federal officer was "directly responsible" for the alleged deprivation of constitutional rights. *Con. Servs. Corp. v. Malesko*, 534 U.S. 61, 70-71 (2001). *Respondeat superior* is inapplicable to *Bivens* actions. *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991).

B.   **Analysis.**

1.   **Count One and Counts Three – Eight.**

Count One alleges violations of constitutional rights and asserts a claim under 42 U.S.C. ¶1983. S/A Colvin was a civilian working for CGIS, a federal agency. He was not a state actor. Federal Officers are exempt from the proscription of § 1983. *District of Columbia v. Carter*, 409 U.S 418, 424-25 (1973); *McCloskey v. Mueller*, 446 F.3d 262, 271 (1st Cir. 2006). Defendant Colvin's motion to dismiss Count One is **GRANTED**.

Counts Three through Eight allege, inter alia, violations of the Washington State Constitution and claims sounding in Washington State and common law tort. Under the *Westfall* Act, S/A Colvin is immune from a suit for damages for these claims. The *Westfall* Act was enacted for the express purpose of "protect[ing] Federal employees from personal liability for common law torts committed within the scope of their employment." Pub. L. No. 100-694, § 2(b) (1988). It provides that a claim against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80, is the "exclusive" remedy for plaintiffs seeking to recover damages from the "negligent or wrongful act or omission of any employee of the Government . . . acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1). Accordingly, on October 11, 2010, this Court entered an Order substituting the United States as the "sole party defendant herein in place of and instead of Defendant Clint Colvin with respect only to those claims alleged by plaintiffs sounding in Washington State or common law tort." [Dkt. #58]. Counts Three through Eight have been dismissed as to S/A Colvin. Any federal constitutional claims that remain from Counts Three through Eight as to S/A Colvin will be treated as *Bivens* claims and addressed in the next section of this Order.

**2. Count Nine.**

Count Nine asserts a claim under *Bivens*. Plaintiffs allege that S/A Colvin is "liable to Plaintiffs for the Constitutional and tort violations detailed throughout this Complaint." TAC ¶ 4.48. In the section of the complaint that identifies S/A Colvin as a defendant, plaintiffs allege violations of their "1st Amendment protected Free Expression and Free Associational activities." TAC ¶ 1.17. They allege that S/A Colvin "identif[ied] individuals and groups of individuals to be arrested and/or targeted despite their lack of actual illegal activity" apparently in violation of the Fourth Amendment. *Id*. Elsewhere in the complaint, plaintiffs state that the action is also brought pursuant to the Fifth, Sixth, and Fourteenth Amendments, but do not tie S/A Colvin to any alleged violation of those constitutional rights. TAC ¶ 1.37. Count Nine further alleges that S/A Colvin violated the Posse Comitatus Act, 18 U.S.C. § 1385.

      **a. The Posse Comitatus Act does not contain a private right of action; even if it did, the Act does not apply to members of the Coast Guard.**

The Posse Comitatus Act (PCA) provides that "[w]hoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined under this title or imprisoned not more than two years, or both." 18 U.S.C. § 1385. The legislative history of the PCA demonstrates that the Act was enacted during Reconstruction following the Civil War to "eliminate the direct active use of Federal troops by civil law authorities." *United States v. Banks*, 539 F.2d 14, 16 (9th Cir. 1976). Of major concern was the use of troops who supported Reconstruction candidates in Southern states during elections to "obstensibly preserve the peace." *United States v. Red Feather*, 392 F. Supp. 916, 922 (D.S.D. 1975).

1    The PCA is a criminal statute. It does not authorize a civil cause of action. In *Lamont v. Haig*, 539 F. Supp. 552, 558-59 (D.S.D. 1982) the Court, after having the benefit of extensive briefing on the legislative history of the PCA and after noting that no case has found a private right of action to exist, held that the PCA does not create a private right of action. More recently, in *Miale v. Tuolumme County Sheriff's Dep't.*, 2009 WL 3073922, *5 (E.D. Cal. 2009), the Court stated that it was "unable to find any [authority] that suggests there exists a private right of action to enforce the Posse Comitatus Act" and held that "Plaintiff may not bring a civil suit for monetary compensation for an alleged violation of the Posse Comitatus Act."

The plain language of the Act states that it applies only to the Army and Air Force. The Act also applies to the Navy and Marine Corps by order of the Department of Defense. The Coast Guard, unlike the other four branches of the military, is a hybrid agency that is "a service in the Department of Homeland Security, except when operating as a service in the Navy." 14 U.S.C. § 1. It only becomes a service of the Navy if Congress so directs "[u]pon declaration of war . . . or when the President directs." 14 U.S.C. § 3. The Coast Guard has statutory law enforcement responsibilities "on, under, and over the high seas and waters subject to the jurisdiction of the laws of the United States." 14 U.S.C. § 2. The Posse Comitatus Act does not apply to the Coast Guard. *United States v. Chaparro-Almeida*, 679 F.2d 523, 425 (5th Cir. 1982).

Plaintiffs now concede that there is no private right of action under the PCA and that the Act, in any event, does not apply to the Coast Guard.

      **b.   Plaintiffs' *Bivens* claim survives defendant's Rule 12(b)(6) motion to dismiss based on qualified immunity.**

          **(i)   *Saucier's* first step.**

Plaintiffs allege violations of their First and Fourth Amendment rights. S/A Colvin asserts that he is protected from liability based upon the doctrine of qualified immunity. The

ORDER- 10

first step of the qualified immunity analysis requires the Court to determine whether a constitutional right was violated based on the facts alleged, taking those facts in the light most favorable to plaintiffs. *Saucier*, 553 U.S., at 201. In support of his position that plaintiffs have not shown a violation of their First or Fourth Amendment rights, S/A Colvin argues: (1) that plaintiffs have failed to allege a concrete harm sufficient to confer standing to bring a First Amendment claim under *Laird v. Tatum*, 408 U.S. 1 (1972); and (2) that S/A Colvin was an "invited informer" whose activities in investigating PMR were legal and done in good faith.

In their response to defendant's motion, plaintiffs do not remotely touch upon the standing issue. They will be expected to address their argument in response to defendant's motion for summary judgment.

Courts have long recognized that the government may use undercover agents in investigating suspected illegal activity. *Sorrells v. United States*, 287 U.S. 435, 441-42 (1932); *United States v. Mayer*, 503 F.3d 740, 750 (9th Cir. 2007). Courts have also long recognized that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979). That is why undercover operations where the agent is a so-called "invited informer" are not searches under the Fourth Amendment. *Mayer*, 503 F.3d at 750. In his Declaration in support of his motion, S/A Colvin states that he attended three publicly advertised meetings of the PMR held at public places. Plaintiffs, in response to the motion, argue that the meetings were not open to the public, but were by invitation only, with the implication being that S/A Colvin's attendance violated plaintiffs' rights.

1    Although the use of an "invited informer"[3] does touch on First Amendment free
2 association rights, so long as the "government's investigation [is] conducted in good faith;  i.e.,
3 not for the purpose of abridging first amendment freedoms" and if "the undercover informers
4 adhere scrupulously to the scope of [the] invitation to participate in the organization[,]"
5 plaintiffs' constitutional rights are not violated.  *United States v. Aguilar*, 883 F.2d 662, 705 (9th
6 Cir. 1989).  Additionally, when an investigation touches on First Amendment rights, it "must
7 also have a legitimate law enforcement purpose."  *Mayer*, 503 F.3d at 751-52.

8    Defendant argues that plaintiffs' Complaint is deficient and cannot withstand his motion
9 to dismiss.  S/A Colvin argues that plaintiffs do not plead that he personally acted with the
10 "purpose of abridging [their] first amendment freedoms;" that he failed to "adhere scrupulously
11 to the scope of the invitation," and that he did not have "a legitimate law enforcement purpose"
12 in investigating the PMR.  Plaintiffs, however, are not generally required to anticipate a
13 defendant's affirmative defense and plead around it.

14    Here, plaintiffs allege that the "groups and individuals were targeted specifically because
15 [the defendants] did not like the content of the speech involved" and in order "to disrupt their 1st
16 Amendment protected Free Expression and Free Associational activities."  TAC ¶ 1.17.
17 Although the exact wording of the Complaint does not specifically allege S/A Colvin targeted
18 the plaintiffs in violation of their First Amendment rights, it can be read to include that

---

[3]    Plaintiffs' reliance on the so-called "agent provocateur" cases including *Handschu v. Special Services Division*, 349 F. Supp. 766 (S.D. N.Y. 1972) is misplaced.  In *Handschu,* police "informers and infiltrators provided, solicited and induced members of lawful political and social groups to engage in unlawful activities . . ." and "provided funds and equipment to further that purpose."  *Id*. at 770.  S/A Colvin's passive investigation here, as alleged in plaintiffs' complaint, comes nowhere near the police tactics proscribed in *Handschu*.

allegation. Therefore, plaintiffs' Complaint does allege that S/A Colvin's actions were done with the "purpose of abridging first amendment freedoms."

As for defendant's argument that he "adhere[d] scrupulously to the scope of the invitation," the Complaint implies that he did not, and plaintiffs argue in response to the motion that the meetings of the PMR were not open to the public and that S/A Colvin was not "invited" to attend. Because Rule 12(b)(6) motions are disfavored, *Brown v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003), and cases should generally be decided on the merits, this Court is reluctant to dismiss this case at the pleading stage. There is a dispute on this issue that needs to be more fully addressed with evidentiary input from the plaintiffs.

S/A Colvin declares that he investigated the PMR based on "a legitimate law enforcement purpose." He investigated because the Coast Guard has primary responsibility for ensuring the safety of ports and because there had been prior protests at ports when shipments of military equipment were sent to Iraq. These protests had resulted in arrests of the protestors at the Port of Tacoma in March, 2007 and at the Port of Grays Harbor in May, 2007. There had also been prior protests at the Port of Olympia in May, 2006 where protestors pulled down a security gate and entered a secured area. Plaintiffs, on the other hand, allege in rather conclusory nature that they are "avowedly peaceful and nonviolent." TAC § 1.17. There is no allegation, however, that plaintiffs had not participated in the prior protests or had not been arrested before. It will be difficult for plaintiffs to prove that S/A Colvin was acting in the absence of a legitimate law enforcement purpose, but, again, that decision should not be made at this stage of the proceeding.

Plaintiffs' other Fourth Amendment claims involve their arrests by Olympia police in November, 2007. Nowhere in plaintiffs' complaint do they allege that S/A Colvin personally

participated in the arrests at the Port of Olympia.  Thus, any claim that excessive force was used by the Olympia police does not state a claim as against S/A Colvin.  *See Con. Serv. Corp. v. Malesko*, 534 U.S. at 70-71; *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1988); *see also Moss*, 572 F.3d at 971 (plaintiffs fail to show how actions of Secret Service agents in directing local police to move protestors had any connection to how the local police carried out the directive).

Plaintiffs allege that S/A Colvin "identif[ied]individuals and groups of individuals to be arrested and/or targeted despite their lack of actual illegal activity" TAC ¶ 1.17.  The statement that the plaintiffs were identified or targeted "despite their lack of illegal activity" is exactly the type of conclusory allegation that *Iqbal* counsels the Court should ignore.  Removing the conclusory allegation and focusing on the remaining facts leaves an allegation that S/A Colvin "identified individuals or groups to be arrested and/or targeted."  Working in an undercover capacity and providing reports of the plans of individuals or of a group of individuals to other law enforcement agencies, without more, does not violate the Fourth Amendment.  *See Id.; see also Mayer*, 503 F.3d at 750-52.  Plaintiffs have not shown that S/A Colvin personally violated their Fourth Amendment right to be free from excessive use of force.  This part of Plaintiffs' *Bivens* claim will be dismissed.

### (ii)    *Saucier's* second step.

The second step of the qualified immunity analysis requires the Court to determine whether the constitutional rights at issue were clearly established when viewed in the specific context of the case.  *Saucier*, 533 U.S., at 201.  As previously stated, the contours of the rights at issue have not been fully fleshed out.  Until more is known about what specifically S/A Colvin did, the Court cannot determine whether a clearly established right was violated.

### c. Plaintiffs' claims for injunctive and equitable relief fail as a matter of law as to S/A Colvin.

Plaintiffs sued S/A Colvin in his individual capacity. Injunctive and equitable relief is not available in individual capacity suits, it is only available in official capacity suits. *Wolfe v. Straijman*, 392 F.3d 358, 360 n. 2 (9th Cir. 2004). Plaintiffs thus cannot obtain the injunctive or equitable relief they seek from S/A Colvin.

### 3. Plaintiffs' Rule 56(f) Motion.

Plaintiffs move under Rule 56(f)[4] to deny defendant's alternative motion for summary judgment until discovery has been conducted. Under the Rule, the Court has the discretion to deny the defendant's motion or continue it until such time as some discovery may be completed. Because defendant has resisted all discovery to date – as is his right when asserting a qualified immunity defense – but has provided S/A Colvin's declaration in support of his motion, fairness dictates that plaintiffs be allowed to conduct limited discovery from S/A Colvin. Discovery shall be narrow in scope and shall be sharply focused on demonstrating how, in light of *United States v. Aguilar* and *United States v. Mayer*, S/A Colvin violated plaintiffs' constitutional rights. Plaintiffs will be permitted to depose S/A Colvin.

### III. CONCLUSION

Plaintiffs' Third Amended Complaint is poorly drafted. The conclusory and speculative nature of many of the Complaint's "factual" allegations run afoul of *Twombly* and *Iqbal*. It is highly unlikely that plaintiffs can overcome S/A Colvin's defense of qualified immunity on the *Bivens* claim. The Court is acutely aware of its role under the doctrine of qualified immunity to resolve litigation against a government official at the earliest possible stage in order to protect

---

[4] Effective December 1, 2010, Fed. R. Civ. P. 56 has been revised. Former Rule 56(f) has been renumbered 56(d).

them from the entirety of the litigation process. *Harlow*, 457 U.S., at 806, 818-19. However, plaintiffs have alleged enough facts to entitle them some leeway to attempt to prove their claim.

It is therefore **ORDERED:**

1. Defendant Clinton D. Colvin's Motion to Dismiss Pursuant to Rule 12(b)(6) [Dkt. #49] is **GRANTED IN PART AND DENIED IN PART**.

2. Count One is **DISMISSED** because S/A Colvin is a federal, not state, actor.

3. Counts Three through Eight are **DISMISSED** pursuant to the *Westfall* Act.

4. Any claim that S/A Colvin violated the Posse Comitatus Act is **DISMISSED** because it does not provide for a private right of action and, in any event, does not apply to members of the Coast Guard.

5. Any claims for injunctive or equitable relief as to S/A Colvin are **DISMISSED**.

6. Plaintiffs' *Bivens* claim in so far as it seeks damages for violation of Plaintiffs' Fourth Amendment right to be free from the use of excessive force is **DISMISSED**. Plaintiffs' *Bivens* act claim in all other respects survives defendant's Rule 12(b)(6) motion.

7. Plaintiffs' Rule 56(f) motion is **GRANTED**. The limited discovery the Court is allowing shall be completed by April 15, 2011. Defendant's Motion for Summary Judgment is renoted for April 29, 2011.

Dated this 28th day of February, 2011.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE