HONORABLE RONALD B. LEIGHTON

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JULIANNE PANAGACOS, et al,

Plaintiffs,

v.

JOHN J. TOWERY, et al,

Defendants.

CASE NO. C10-5018 RBL

ORDER GRANTING
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendants' Motions for Summary Judgment. Defendants seek judgment as a matter of law that they did not violate the Plaintiffs' constitutional rights in their efforts ensure the safe transport of military equipment despite Plaintiffs' protests. Plaintiffs have failed to adduce sufficient evidence to establish a necessary connection between Defendants' conduct and any constitutional violations. For the following reasons, Defendants' Motions for Summary Judgment are GRANTED.

**I.      Background**

The long factual and procedural history of this case is well-known to the parties and the Court and has been addressed in prior orders. Plaintiffs are part of an organization called the Port Militarization Resistance. PMR's members engage in civil disobedience to protest the use of

public ports for the transfer of military equipment employed in the wars in Iraq and Afghanistan. In 2007, Plaintiffs engaged in various protests including jumping in front of moving Stryker vehicles, using a "Sleeping Dragon"[1] to block a freeway on ramp, using young children to block military equipment, and other similar acts of civil disobedience. Plaintiffs broadly claim that their conduct was protected speech, and that the Defendants, and others, violated their constitutional rights while trying to stop the protests, which included pepper-spraying and arresting the Plaintiffs during their various demonstrations.

Defendants Towery and Rudd are civilian employees of the United States Army Force Protection Division at Fort Lewis. In March 2007, Towery used a false identity to befriend PMR members and access their communications. He often relayed his findings to Rudd, who issued "Threat Assessments" regarding PMR. Towery also obtained access to the "Oly22 listserv" managed by the defense team for a criminal case arising from a 2006 demonstration at the Port of Olympia.  Plaintiffs argue that their listserv was private and attorney-client protected, and Towery unlawfully infiltrated these communications. Plaintiffs also claim that Defendants' methods for breaking up protests violated their constitutional rights, and Towery's deceptive entrance into PMR directly caused subsequent intrusions upon their constitutional rights.

Plaintiffs sued over 20 individuals and agencies for a laundry list of constitutional and tort claims.  Since the case's inception years ago, a plethora of motions, orders, and oral arguments have whittled the matter down to the more relevant issues and parties. This order addresses only the major points raised in the current Motions.

The remaining defendants are Olympia Police Department officers, City of Olympia employees, and the City of Olympia (Olympia Defendants); Tacoma Police Department officers,

---

[1] In a "Sleeping Dragon," demonstrators handcuff themselves together through PVC pipe to create a human obstacle that is difficult to move or penetrate. http://en.wikipedia.org/wiki/Sleeping_dragon

1  and the City of Tacoma (Tacoma Defendants); and John Towery, and Thomas Rudd. The

2  remaining claims against the Olympia and Tacoma Defendants are similar and consist primarily

3  of 42 U.S.C § 1983 claims for violations of various constitutional rights, state constitutional

4  claims, and state law false arrest and intentional infliction of emotional distress tort claims. The

5  remaining claims are First and Fourth Amendment *Bivens* claims, analogous to §1983 claims

6  against state actors, against federal employees Rudd and Towery.

7      Plaintiffs contend that Defendants' actions infringed upon their constitutional and civil

8  rights. Defendants generally respond by pointing out a lack of evidence to demonstrate a link

9  between their acts and the alleged constitutional violations. They maintain that their actions were

10  entirely lawful, and argue that the individual officers are entitled to qualified immunity in any

11  event.

12                        **II.      Discussion**

13  **A.      Summary Judgment Standard**

14      Summary judgment is appropriate when, viewing the facts in the light most favorable to

15  the nonmoving party, there is no genuine issue of material fact which would preclude summary

16  judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to

17  summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to

18  interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for

19  trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of

20  evidence in support of the non-moving party's position is not sufficient."  *Triton Energy Corp. v.*

21  *Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not

22  affect the outcome of the suit are irrelevant to the consideration of a motion for summary

23  judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words,

24

1  "summary judgment should be granted where the nonmoving party fails to offer evidence from

2  which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at

3  1220.

4  **B.    Excessive Force**

5          Excessive force claims are governed by the Fourth Amendment's "objective

6  reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Whether or not an

7  officer's use of force is reasonable depends on "careful balancing of the nature and quality of the

8  intrusion on individual's Fourth Amendment interest against countervailing government interests

9  at stake." *Id.* Reasonableness is assessed from the perspective of a reasonable officer on the

10 scene, rather than with the clarity of hindsight. *Id.*

11 **C.    Qualified Immunity**

12         Qualified immunity "shields an officer from suit when she makes a decision that, even if

13 constitutionally deficient, reasonably misapprehends the law governing the circumstances she

14 confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).  Qualified immunity protects

15 officers not just from liability, but from suit: "it is effectively lost if a case is erroneously

16 permitted to go to trial," and thus, the claim should be resolved "at the earliest possible stage in

17 litigation." *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987).  The Supreme Court has

18 endorsed a two-part test to resolve claims of qualified immunity: a court must decided (1)

19 whether the facts that a plaintiff has alleged "make out a violation of a constitutional right," and

20 (2) whether the "right at issue was 'clearly established' at the time of defendant's alleged

21 misconduct." *Pearson v. Callahan*, 553 U.S. 223, 232 (2009).

22         The purpose of qualified immunity is "to recognize that holding officials liable for

23 reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in

24

ORDER GRANTING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT - 4

1  challenging situations, thus disrupting the effective performance of their public duties." *Mueller*

2  *v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009).  Because "it is inevitable that law enforcement

3  officials will in some cases reasonably but mistakenly conclude that probable cause [to arrest] is

4  present," qualified immunity protects officials "who act in ways they reasonably believe to be

5  lawful."  *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011) (quoting *Anderson*,

6  483 U.S. at 631).  An additional purpose of the doctrine is to "protect officers from the

7  sometimes 'hazy border' between excessive and acceptable force."  *Brosseau v. Haugen*, 543

8  U.S. 194, 198 (2004). (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).

9        In order to set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff

10  must show that the defendant's employees or agents acted through an official custom, pattern or

11  policy that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the

12  entity ratified the unlawful conduct.  *See Monell v. Department of Social Servs.*, 436 U.S. 658,

13  690-91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646–47 (9th Cir. 1991).  Under

14  *Monell*, a plaintiff must allege (1) that a municipality employee violated a constitutional right;

15  (2) that the municipality has customs or policies that amount to deliberate indifference; and (3)

16  those customs or policies were the "moving force" behind the constitutional right violation.

17  *Board of County Com'rs v. Brown*, 520 U.S. 397, 404 (1997).  A municipality is not liable

18  simply because it employs a tortfeasor.  *Monell*, 436 U.S. at 691.  A municipality may be liable

19  for inadequate police training when "such inadequate training can justifiably be said to represent

20  municipal policy" and the resulting harm is a "highly predictable consequence of a failure to

21  equip law enforcement officers with specific tools to handle recurring situations."  *Long v.*

22  *County of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006); *id.* (quoting *Board of County*

23  *Com'rs*, 520 U.S. at 409).

24

Qualified immunity also operates in the context of excessive force claims. *Saucier*, 533 U.S. at 205. Officers who mistakenly apply more force than is required are still entitled to qualified immunity if that mistake was reasonable. *Id.*

**D.     Constitutional Claims Against Olympia Defendants Arising from PMR's Protest Activities**

1.   July 27, 2007 detention and arrest of Plaintiff Berryhill

This claim is barred by the three-year statute of limitations because it was not referenced in the original complaint.  Defendants' Motion for Summary Judgment on this claim is GRANTED and the claim is DISMISSED.

2.   November 8, 2007 pepper spraying of Plaintiff Dunn

While a truck convoy was transporting military equipment from the Port to Olympia, Shyam Prasad Khanna (not a party in this case) ran into the street to stand in front of the Stryker and block the convoy. The driver had to swerve to avoid him. Officers chased Khanna, and he ran into a group of demonstrators for protection. Plaintiff Dunn attempted to impede the officers from arresting Khanna, and an officer deployed pepper spray at the group. It is not a constitutional violation for law enforcement to use pepper spray in this manner. Even if it was, judicial precedent would not put the officer on notice that he was infringing upon any "clearly established" right, so he is entitled to qualified immunity. Defendants' Motion for Summary Judgment on this claim is GRANTED and the claim is DISMISSED.

3.   November 7, 2007 pepper spraying of Plaintiff Grande

Grande says this event occurred on November 9, 2007, but no Stryker vehicles moved on that day. On November 7, a protestor ran in front of a Stryker vehicle, and officers carried him off the street. More demonstrators ran into the street, and they were pepper sprayed. Grande was behind them and claims to have received some "overspray mist." Video footage of the event does

1   not depict pepper spray being used. But even if it was used, it is not a violation of Grande's

2   constitutional rights to have inadvertently been "misted" with pepper spray.  Even if it was,

3   Plaintiffs have cited no authority that clearly establishes this right, and the individual defendants

4   are entitled to qualified immunity, as a matter of law.  Defendants' Motion for Summary

5   Judgment on this claim is GRANTED and the claim is DISMISSED.

6       4.  November 10, 2007 pepper spraying of Plaintiff Robbins

7           Robbins was sitting in front of the main gate to block the intended path of a Stryker

8   convoy. The protestors refused to follow police orders to move out of the way. A Lieutenant

9   used pepper spray to clear the street, but Robbins still refused to move. Officers then used a

10  "hands on" approach to scatter the remaining protestors. The evidence fails to show that the

11  officers violated any constitutional rights by using these methods to break up the protest and

12  clear the way for the Strykers. Even they did, the Plaintiffs have not cited precedent that would

13  make this right clearly established, and the offices are entitled to qualified immunity as a matter

14  of law. Defendants' Motion for Summary Judgment on this claim is GRANTED and the claim is

15  DISMISSED.

16      5.  November 10, 2007 first alleged pepper spraying of Plaintiff Garfield

17          Garfield claims she was standing peacefully on a sidewalk observing a demonstration

18  when an officer dropped a can of pepper spray that let off spray which made her eyes and skin

19  burn for an hour. The allegations are hopelessly vague, and there is no direct assertion that she

20  was deliberately pepper sprayed. There is insufficient evidence to show a constitutional

21  violation. Defendants' Motion for Summary Judgment on this claim is GRANTED and the claim

22  is DISMISSED.

23

24

1      6.  <u>November 10, 2007 second pepper spraying of Plaintiff Garfield</u>

2      A convoy of military vehicles was blocked by pedestrians, including Sarah Warren, who

3  ran out into the street. An Olympia police officer confronted Warren, and Garfield jumped in

4  between them. Warren refused to obey commands to leave the street. The officer deployed

5  pepper spray and the resulting mist affected Garfield.  It was not a constitutional violation for the

6  officers to use pepper spray, and Garfield's rights were not violated because she was exposed to

7  the mist. Even if it was a violation, Plaintiffs have cited no authority that would have put the

8  officer on notice that the conduct was unconstitutional, and qualified immunity applies.

9  Defendants' Motion for Summary Judgment on this claim is GRANTED and the claim is

10  DISMISSED.

11      7.  <u>November 10, 2007 "Sleeping Dragon" incident with Plaintiff Grande</u>

12      Grande was part of a Sleeping Dragon which was being positioned to block the street and

13  impede the convoy. An officer deployed pepper balls to move the protestors out of the street, two

14  of which struck Grande. Using pepper balls to break up the protest did not violate any

15  constitutional rights, but even if it did, Plaintiffs have pointed to no authority that clearly

16  establishes such right. The officer is entitled to qualified immunity. Defendants' Motion for

17  Summary Judgment on this claim is GRANTED and the claim is DISMISSED.

18      8.  <u>November 10, 2007 pepper spraying of Plaintiff Berryhill</u>

19      During the same Sleeping Dragon incident, another officer cleared several protestors

20  attempting to block the route around the Sleeping Dragon. Berryhill refused to comply with the

21  orders. He was pepper sprayed. This did not violate any constitutional rights, but if it did,

22  Plaintiffs have not cited authority that would put the officer on notice that his conduct was

23

24

1  unconstitutional, and qualified immunity applies. Defendants' Motion for Summary Judgment on

2  this claim is GRANTED and the claim is DISMISSED.

3      9.   November 13, 2007 women's protest and arrest of Plaintiffs Panagacos and Robbins

4          A group of 40 female protestors sat down in front of the Main Gate to block a convoy of

5  Strykers. They wore protective gear to defend against pepper spray. They were ordered to

6  disperse; Panagacos and Robbins refused, so they were arrested. Robbins passively resisted

7  arrest by acting as dead weight, so one officer used a "gooseneck" hold on her to cause pain

8  without injury to induce compliance. This accepted procedure did not violate any constitutional

9  rights, but if it did, Plaintiffs have not cited authority that makes the right clearly established, and

10 qualified immunity applies. Panagacos claims the zip tie on her wrist was too tight and left

11 imprints on her skin, and that the conditions during holding and transport were overcrowded.

12 This did not violate any constitutional rights, but if it did, Plaintiffs have not cited authority that

13 makes the right clearly established, and qualified immunity applies. Defendants' Motion for

14 Summary Judgment on this claim is GRANTED and the claim is DISMISSED.

15     10.  November 13, 2007 pepper spray of Plaintiff Grande

16         Grande claims that he was pepper sprayed while on a sidewalk observing a moving

17 convoy. A freeze frame shows him in the street in disobedience of lawful command. Pepper

18 spraying him did not violate any constitutional rights.  Even if it did, Plaintiffs have not cited

19 authority that would make this right clearly established, and qualified immunity applies.

20 Defendants' Motion for Summary Judgment on this claim is GRANTED and the claim is

21 DISMISSED.

22

23

24

**E.     Constitutional Claims Against Tacoma Defendants Arising from PMR's Protest Activities**

1. Infiltration of the Oly22 Listserv

Plaintiffs allege that Tacoma Defendants infiltrated the Oly22 listserv to spy on the Plaintiffs. There is no evidence that Tacoma Defendants even engaged in any such activity. Even if they did, there was no expectation of privacy because the listserv was accessible to the public, and there was no notice that it was attorney-client privileged.  And, even if there was such a notice, the attorney-client privilege does not apply to communications shared with third persons. Public communications are not privileged as a matter of law, and it is not a cause of action to see privileged information. If the claim is invasion of privacy, even the Plaintiffs' evidence shows that they put the information on the Internet for anyone to see.  Defendants' Motion for Summary Judgment on this claim is GRANTED and the claim is DISMISSED.

2. Arrests of Berryhill and Dunn

Berryhill and Dunn allege constitutional violations against Tacoma Defendants arising from their arrests in March 2007 and June 2007, respectively. These claims are time-barred, as Berryhill and Dunn failed to make these claims against Tacoma Defendants until they were added to this lawsuit in 2010. Defendants' Motion for Summary Judgment on these claims is GRANTED and the claims are DISMISSED.

3. Constitutional violations arising from installation of a pole camera

Plaintiff Crespo claims that his First and Fourth Amendment rights were violated when Tacoma Defendants installed a camera on a utility pole two blocks from his home. He contends that the purpose of the camera was to spy on his residence. Video surveillance is not a per se privacy violation and "the police may record what they normally may view with the naked eye." *United States v. Taketo*, 923 F.2d 665, 677 (9th Cir. 1991). Anything that the camera may have

1    recorded was visible from the public street, so no reasonable expectation of privacy exists. There

2    is no evidence to show that the camera actually captured any activities within the home. This did

3    not violate a constitutional right. Defendants' Motion for Summary Judgment on this claim is

4    GRANTED and the claim is DISMISSED.

5        4.   <u>Constitutional violations arising from conversations with Crespo's landlord</u>

6        Crespo claims that a Tacoma police Lieutenant told his landlord that he and the other

7    residents of his home were "terrorists." Plaintiff has failed to submit any admissible evidence

8    regarding this matter in a timely fashion. There is no evidence that it even occurred.  In order to

9    remedy this, Plaintiffs apparently want to identify and solicit testimony from the landlord.  This

10   request is untimely. There is insufficient evidence to show a constitutional violation. Defendants'

11   Motion for Summary Judgment on this claim is GRANTED and the claim is DISMISSED.

12       5.   <u>Damages for violation of Washington State Constitution</u>

13       By not responding to the summary judgment motion against them regarding this claim,

14   Plaintiffs have conceded that they have no cognizable claim for money damages for violation of

15   the Washington State Constitution. Defendants' Motion for Summary Judgment on this claim is

16   GRANTED and the claim is DISMISSED.

17       6.   <u>Berryhill and Dunn's Fifth and Sixth Amendment claims</u>

18       Plaintiffs Berryhill and Dunn have not responded to the summary judgment motion against

19   them regarding their Fifth and Sixth Amendment claims. They have therefore conceded that they

20   have no Fifth or Sixth Amendment claims against the Tacoma Defendants.  LCR 7. Defendants'

21   Motion for Summary Judgment on these claims are GRANTED and the claims are DISMISSED.

22

23

24

1       7.  <u>Crespo's outrage claim</u>

2    By not responding to the summary judgment motion against them regarding this claim,

3    Crespo has conceded that he has no outrage claim against the Tacoma Defendants. Defendants'

4    Motion for Summary Judgment on this claim is GRANTED and the claim is DISMISSED.

5    **F.      Infiltration by Defendants Rudd and Towery**

6    Plaintiffs claim that Towery's infiltration of PMR under false pretenses and

7    communicating to Rudd the information he had gathered at PMR meetings amounted to an

8    unconstitutional privacy invasion and stifled their First Amendment free speech rights. Plaintiffs

9    argue that Rudd's dissemination of this material to law enforcement resulted in concerted efforts

10   to violate these constitutional rights.

11   An individual has a private right of action for damages against federal officers alleged to

12   have violated his or her constitutional rights. *Bivens v. Six Unknown Fed. Narcotics Agents*, 403

13   U.S. 388 (1971). Such actions are identical to actions under 42 U.S.C. § 1983, except for the

14   replacement with a federal actor under *Bivens* for a state actor under §1983.  *Van Strum v. Lawn*,

15   940 F.2d 406, 409 (9th Cir 1991).   The plaintiff must show that the federal officer was "directly

16   responsible" for the alleged deprivation of constitutional rights.  *Con. Servs. Corp. v. Malesko*,

17   534 U.S. 61, 70-71 (2001).

18   A "search" for the purposes of the Fourth Amendment "occurs when the government

19   infringes on a subjective expectation of privacy that society is prepared to recognize as

20   reasonable." *United States v. Pope*, 686 F.3d 1078, 1081 (9th Cir. 2012). An undercover

21   operation where the agent is an "invited informer" are not searches under the Fourth

22   Amendment. *Panagacos v. Towery*, 782 F. Supp. 2d 1183, 1191 (W.D. Wash. 2011) (citing

23   *United States v. Mayer*, 503 F.3d 740, 750 (9th Cir. 2007)). "A government agent may obtain an

24

1   invitation onto property by misrepresenting his identity, and if invited, does not need probable

2   cause nor a warrant to enter so long as he does not exceed the scope of his invitation." *United*

3   *States v. Scherer*, 673 F.2d 176, 182 (7th Cir. 1982).

4           Infiltrating the private meetings of an expressive group does not always amount to a First

5   Amendment violation, but in the event that it does, qualified immunity may shield government

6   officials who carry out these investigations. *Presbyterian Church (U.S.A.) v. United States,* 752

7   F. Supp. 1505, 1512-1514 (D. Ariz. 1990) (finding that government defendants were entitled to

8   qualified immunity for attending and surreptitiously monitoring church services when they had a

9   legitimate state interest in doing so). Determining when this activity infringes upon constitutional

10  protections requires a balancing of First Amendment rights against objectively reasonable

11  security concerns. *Id.* Free speech protections are not limitless, and the First Amendment "does

12  not leave people at liberty to publicize their views 'whenever and however they please.'" *Wood*

13  *v. Moss,* 134 S. Ct. 2056, 2059 (2014) (citing *United States v. Grace,* 461 U.S. 171, 177 (1983)).

14          The parties do not dispute that Towery participated in PMR gatherings as an invited

15  informant. The lack of knowledge of Towery's true identity and role do not transform a

16  consensual invitation or conversation into a search because judicial precedent does not recognize

17  such investigative operations as a search for the purposes of the Fourth Amendment. The

18  activists' intentions were to block movement of heavy, dangerous military equipment and troops.

19  Though they are a peace group, the evidence reveals that they engaged in very hazardous

20  activities, including jumping in front of moving military vehicles and using young children to

21  block military equipment. There is no evidence to show that Rudd and Towery's actions chilled

22  First Amendment rights, nor is there evidence to show that they intended to chill First

23  Amendment rights. Their stated objective was to avoid a blockade of troops and equipment and

24

ORDER GRANTING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT - 13

1  ensure the safety of all involved in these transfers, and there is no evidence establishing a

2  contrary intent.

3         For a *Bivens* claim, it is not enough, as a matter of law, that Rudd provided information to

4  other law enforcement agencies. Plaintiffs must show that Rudd caused an arrest he knew would

5  be unsupported by probable cause. Plaintiffs have offered numerous legal theories to causally

6  link Rudd and Towery's actions to later arrests. Yet, the quantity of arguments does not

7  compensate for a lack of quality or coherence. Plaintiffs have not come forward with evidence to

8  lend any credence to their theories. Rudd and Towery's actions may offend the democratic ideals

9  that underlie our collective moral consciousness, but they remain within the constraints of the

10  law.

11         For these reasons, and for the reasons articulated at the June 18, 2014 hearing,

12  Defendants' Motions for Summary Judgment are **GRANTED** and Plaintiffs' claims are

13  **DISMISSED WITH PREJUDICE**.

14         IT IS SO ORDERED.

15  Dated this 21st day of July, 2014.

16

17  _____

18  RONALD B. LEIGHTON
    UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

ORDER GRANTING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT - 14